STATE of Iowa, Appellee,

v.

James Thomas GALLOWAY, Appellant.

No. 53227.

Supreme Court of Iowa.

April 8, 1969.

Rehearing Denied June 10, 1969.

James B. McGrath and McCracken & Carlin, by John J. Carlin, Davenport, for appellant.

Richard C. Turner, Atty. Gen., James C. Sell, Asst. Atty. Gen., and Edward N. Wehr, County Atty., for appellee.

SNELL, Justice.

Defendant-appellant has appealed from his conviction, judgment and sentence for first degree murder. Because of recent developments in our law not foreseeable at the time of trial, the case must be reversed.

On January 3, 1964 while at work in his store in Davenport Harry Shannon, Jr. was shot and killed by an armed robber.

On June 27, 1967 defendant herein was charged with the murder. Amended and substituted information was filed August 8, 1967. He had been arrested in Missouri and after proceedings there had been returned to Iowa. Defendant was tried before judge and jury. Trial began October 17 and on October 30, 1967 the jury returned a verdict of guilty of murder in the first degree.

From the index to the record before us it appears that the State and defense called many witnesses. Probably because not germane to the issues on appeal very little of the testimony in behalf of the State is set out in the record. The sufficiency of the evidence to support the verdict is not challenged. It need not be reviewed here.

Defendant challenged his identification as a participant in the crime. He served notice of alibi and offered testimony by himself and other witnesses that he was in Lexington, Missouri at the time and consequently could not have committed the offense.

I. Pursuant to statute (sections 772.3 and 780.10), defendant was furnished the names of all witnesses the State expected to call at the trial together with minutes of their testimony.

In response to a request and order for a bill of particulars (section 773.6) the State also produced (1) photographs of the defendant in possession of the police upon which identification by witnesses was initially made; (2) sketches or drawings of the alleged assailant; (3) consent to lie detector test; (4) results of lie detector test; (5) photograph of witness Bobby Ferguson, and (6) the drawings of the defendant upon which identification was made.

The court also said that if during the trial any reference was made to certain other statements the court would order them produced if germane.

In Division II, infra, we will consider the open court production of the matters referred to.

■ It is well settled that a motion for a bill of particulars is addressed to the sound discretion of the trial court and its ruling will not be reversed unless sound discretion is abused. State v. Shephard, 255 Iowa 1218, 1230, 124 N.W.2d 712. See also State v. Schreck, 258 Iowa 218, 223, 137 N.W.2d 914.

Defendant points to nothing that would indicate that he has been denied any relevant information. His attack is general and not specific. In his brief and argument he says:

"This portion of the brief and argument can be considered as an attack upon the discovery techniques available to a defendant in a criminal action in this state."

We have on several recent occasions reviewed the right to discovery in criminal cases.

In State v. District Court etc., 253 Iowa 903, 114 N.W.2d 317, we held that the rules of civil procedure are not available in criminal cases. We said:

"For many years a defendant in a criminal case has had all the protection that can be legitimately needed or afforded by discovery. He is furnished a copy of the in-

dictment; the names of the prosecution's witnesses must be furnished him; if this is not done they may not testify against him. He has the right under our Constitution to be confronted by the witnesses against him. The minutes of the testimony before the grand jury, or the substance of the proposed testimony of each witness if the cause is prosecuted by true information, must be furnished him." (loc. cit. 911, 114 N.W.2d loc. cit. 322)

We also commented on section 781.10 giving a defendant the right to take depositions to obtain and offer evidence in his own behalf when the witnesses might not be otherwise available. We held the statute not applicable to discovery.

In State v. McClain, 256 Iowa 175, 181, 125 N.W.2d 764, 767, 4 A.L.R.3d 134, we mentioned some of the provisions protecting an accused and said: "In Iowa a defendant in a criminal case is protected far beyond the scope of discovery depositions without resort thereto." See State v. Gates, Iowa, 150 N.W.2d 617, 621.

In State v. White, Iowa, 151 N.W.2d 552, we again reviewed the safeguards surrounding a defendant. The case involved a claim of entrapment by police through the aid of an informer. At time of trial the claimed informant could not be found. Because of the claim that the police radio tapes might show evidence of entrapment we remanded for examination by the court in camera. We did not open the door to discovery procedure. We said: " * * * a defendant is not entitled to unrestricted examination of police records." (loc. cit. 557 of 151 N.W.2d)

■ We find no abuse of the trial court's discretion or reversible error in the exercise thereof.

II. The defendant claims error in requiring certain statements to be given to defendant in the presence of the jury.

Mrs. Adomat, a witness for the State, identified defendant as the only person ex-

cept her husband and herself near the decedent at the time of the shooting. In cross-examination defendant's counsel asked about statements and descriptions given to the police. We quote from the addendum to the record.

"MR. CARLIN: Your Honor, at this time the Defendant, Mr. Galloway, would move the Court to require the police to produce the statement and the description given at that time, so that the Defendant can adequately prepare—

"THE COURT: Do you have the statement? Where is your statement? [Mr. Wehr produces document in open court]

"MR. CARLIN: Your Honor, may I have a short recess to go ahead and review it?

"THE COURT: Well, we'll wait here. You go ahead and review it."

Defendant's counsel apparently found nothing helpful in the statement or anything that might require time for study. He questioned the witness about other statements. Counsel for the State made a professional statement that there was nothing else. The request for a recess was not renewed. After some discussion between counsel and the witness the State offered the statement in evidence. Defendant objected. The statement was not received.

Defendant claims abuse of discretion and reversible error under the Jencks Act, 18 U.S.C.A. section 3500.

Defendant's counsel has now seen the statement. On retrial it is not likely that the situation will recur. However, because of recent Federal Court pronouncements we comment thereon.

We considered the Jencks Act in State v. White, supra, and indicated approval of comparable procedure in that case.

Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103, was decided June 3, 1957. It was a prosecution for filing a false non-communist affidavit.

Undercover-agents testified for the government. Cross-examination brought out the existence of regular reports made during their undercover activity and association with the defendant. The issue involved the right of the defendant to inspect such reports as might be relevant to the subject matter of their testimony.

One Justice took no part. Two Justices joined in an opinion concurring in the result. One Justice in a dissenting opinion pointed out the need for action by the congress.

The congress acted promptly and enacted the statute referred to. This statute provides:

"§ 3500. Demands for production of statements and reports of witnesses

"(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) to an agent of the Government shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

"(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

"(c) If the United States claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the United States to deliver such statement for the inspection of the court in camera. * *

Whenever any statement is delivered to a defendant pursuant to this section, the court in its discretion, upon application of said defendant, may recess proceedings in the trial for such time as it may determine to be reasonably required for the examination of such statement by said defendant and his preparation for its use in the trial. * * *"

It has been held that this section does not afford defendant license to rummage through prosecution files before trial, but was intended to protect files from unwarranted disclosure and to only make available at trial those materials which might lead to impeachment. Caldwell v. United States, 8 Cir., 338 F.2d 385, certiorari denied 380 U.S. 984, 85 S.Ct. 1354, 14 L.Ed. 2d 277; United States v. Johnson, 4 Cir., 337 F.2d 180, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681; Saunders v. United States, 114 U.S.App.D.C. 345, 316 F.2d 346.

The procedural method in determining what is related to the issue is left to the court's discretion. United States v. Hilbrich, D.C., 232 F.Supp. 111, 7 Cir., 341 F.2d 555.

The many cases under this statute show that it was not intended to provide for general discovery. It is available after a witness has testified and for impeachment. The granting of a recess for examination is within the discretion of the trial court.

See discussion in United States Petitioner v. Augenblick, and United States, Petitioner v. Juhl, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537, decided by Supreme Court of the United States, January 14, 1969. In that case the Supreme Court, quoting from Palermo v. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287, said: " * * * the administration of the Jencks Act must be entrusted to the 'good sense and experience' of the trial judges subject to 'appropriately limited review of appellate courts.' "

This statement from Pallotta v. United States (1 Cir.), 404 F.2d 1035, 1037, sup-

ports the claim that it is an abuse of discretion to require examination in the presence of the jury.

" * * * Section 3500 of Title 18 of the United States Code, whch grants 'the right of examination of pretrial statements of government witnesses, is silent as to the conditions which should surround the examination. Yet there exists the possibility of prejudice both to the defense and the prosecution. If defense counsel, after requesting and examining a statement before the jury, decides not 'to' use it in cross-examining a witness, he runs the risk that a jury may infer that the statement was consistent with the testimony, resulting indirectly in accomplishing what cannot be done by the prosecution directly —using prior consistent statements to corroborate its own unimpeached witness. This danger has led the District of Columbia Circuit to declare it reversible error to require that requests and examination be made in the presence of the jury. Gregory v. United States, 125 U.S.App.D.C. 140, 369 F.2d 185 (1966). Moreover, we can appreciate the likelihood· that requiring defense counsel to read a possibly long and detailed statement for the first time and to decide its utility for cross-examination under the wondering eyes of a jury may add psychological burdens which are neither necessary nor helpful in securing a fair trial."

■ The Supreme Court has not said what would be an abuse of discretion in a case comparable to the one before us, but in the light of the most recent pronouncements counsel should be given the right of examination outside the presence of the jury.

In the case before us defendant's counsel seeks greater comfort from our statements in State v. White, supra, than they afford. The cases are not comparable. Here the statements have been seen by defendant's counsel. He apparently found nothing helpful therein. In the White case we held: "There are situations where a

defendant is entitled to use records from which a witness has testified." Page 557 of 151 N.W.2d. We remanded to the district court for determination of what might be on the radio tapes germane to the issue of entrapment. It was a limited direction relevant and material to a particular issue in an unusual situation.

III. The defendant while in custody in Missouri, and. represented by Missouri counsel, signed a stipulation and waiver for the taking of a lie detector test, said stipulation also agreeing that it might be used in evidence.

Present counsel for the defendant timely objected to the use of such testimony, both in voir dire of witness, Lindberg, and also to the introduction of such testimony during trial. The defendant moved to strike such testimony at its conclusion.

George W. Lindberg, called as a witness on behalf of the State, was first sworn in chambers and a voir dire examination took place outside of the jury's presence. The witness testified that his occupation was that of a polygraph examiner. He described his training and qualifications for such a position. In the addendum to record, prepared by defendant's counsel, this appears: "Such qualifications are not an issue in the instant suit." We accordingly proceed from the premise that the witness was a properly qualified expert. The witness testified that he conducted on March 31, 1967 a polygraph test of the defendant, James Galloway, in the jail at Kansas City, Missouri. That based on his experience and in his opinion, the subject was not truthful when he answered the questions and *it is his opinion that the subject was involved in the shooting of the grocer at S & N Store on January 3rd, 1964.* (Emphasis added.)

There had been motions to suppress the witness' testimony on constitutional grounds, lack of showing as to the physical condition of the defendant prior to the examination and the general holdings that

lie detector tests are inadmissible. We find no attack on the extent to which the witness expressed his opinion.

· ■ State v. McNamara, 252 Iowa 19, 104 N.W.2d 568 was a prosecution for murder. Defendant admitted shooting her husband. She alleged she acted in justifiable self-defense. We held where a defendant charged with murder agreed in writing to take a polygraph-lie detector-test and stipulated the examiner may testify in court as to his opinion of the results of the test, his testimony regarding the results was admissible in evidence.

"The test was made at the office of Professor Richard Holcomb, Chief of the Bureau of Police Science, at the State University of Iowa. The defendant was asked some informal questions, the procedures were explained to her to some extent and she was then asked five questions: '(1) Were you standing in the truck when you shot Ed McNamara? (2) Did you reload the twenty-two rifle the night Ed was shot? (3) Did you try to shoot Charles Smith after you shot McNamara? (4) Were you in the truck when Charles Smith left the yard? and (5) Did you force Charles Smith out of the truck with the rifle?' Her answer to each question was 'no'. Professor Holcomb testified that in his opinion all five answers were untrue." (loc. cit. 27, 28 of 252 Iowa loc. cit. 573 of 104 N.W.2d)

These questions and answers, of course, were germane to the problems to be answered by the jury, but they did not attempt to tell the jury that defendant was guilty of murder.

In the case before us the substance of the witness' answer was that defendant was guilty. While the dividing line between what an expert witness may say in offering his opinion and what goes too far is narrow it should be kept in mind.

In Grismore v. Consolidated Products Co., 232 Iowa 328, 5 N.W.2d 646, we considered hypothetical questions asked an expert. On page 361 of 232 Iowa, on page 663 of 5 N.W.2d this appears:

"* * * if the matter before the tribunal for determination is one in which opinion testimony, either lay or expert, is necessary or proper, the witness may express his opinion either as to the possibility, probability, or actuality of the matter of fact about which he is interrogated, and the answer will not be an invasion or usurpation of the province or function of the jury, even though it passes upon an ultimate ·fact⁻ which the jury must determine.

"Of course, we are not to be understood as saying that opinion testimony should be received as to all matters. It should be received only as to such matters as are the proper subjects of opinion testimony. No witness should be permitted to give his opinion directly that a person is guilty or innocent, or is criminally responsible or irresponsible. * * *"

On the record we have before us we would not reverse because of what was part of the expert's testimony but on retrial the rules evolved from our pronouncements should be kept in mind.

· ■ The polygraph examiner properly qualified as an expert should be permitted to explain the nature of the tests given, state the questions asked and answers given, the reactions thereto as indicated by the equipment and his opinion as to defendant's telling the truth when answering the specific questions. The witness should not be asked nor permitted to answer directly that defendant was involved in the shooting. If defendant was involved in the shooting in this case he was involved in a murder, in other words, guilty. An expert, testifying to a hypothetical question or as to tests made may not go that far.

Counsel for defendant argues that State v. NcNamara, supra, should be overruled and lie detector tests held inadmissible regardless of consent. We have never

held and do not now hold that the results of such a test are admissible in the absence of consent. We are not convinced that when a defendant has given voluntary consent to a test (undoubtedly hoping it would help him) and to the admission in evidence of the results what he has consented to should not be received.

The weight and credit to be given to the testimony is an entirely different matter.

IV. In the trial of the case there was expert testimony other than the polygraph testimony. The trial court gave a general instruction on expert testimony. It has not been attacked.

■ Defendant requested and the court refused to give an instruction telling the jury, among other things, that results of polygraph tests are not generally admissible in evidence. The request went too far and was properly refused.

As to the polygraph test the court instructed as follows:

"Evidence has been introduced as to a polygraph or lie-detector test that was made on the defendant after his arrest in this case. The results of this test are not admissible unless the defendant, without any threat or coercion, voluntarily submitted to said test, and without any inducement or promise of immunity from prosecution, and unless the defendant consented to the use of the results of said test in court. If you find that the defendant voluntarily submitted to said polygraph or lie-detector test and that it was obtained without any threat or coercion and without any inducement or promise of immunity from prosecution and that he consented that the person conducting said test might testify in court as to the results thereof, then you will give this evidence respecting this polygraph or lie-detector test such weight as you think it is entitled to receive, taking it into consideration along with all of the testimony introduced

in his case in determining the guilt or innocence of the defendant.

"If you find that the defendant did not voluntarily submit to said polygraph or lie-detector test and did not consent that the person conducting said test might testify in court as to the results of said test, then you shall give no consideration to said test."

Defendant took exceptions to the instructions as an incorrect statement of the law and for failing to embody his requested instruction.

The instruction as given was as requested by defendant, except for the omission as to admissibility mentioned, supra. This instruction numbered 24 followed the general instruction on expert or opinion testimony. The general instruction told the jury how to weigh expert testimony.

■ As noted, supra, in Division III, the qualifications of the lie detector witness as an expert are not challenged by defendant. The instruction was as requested except for a part that would have been improper. Defendant had agreed to the admissibility of the testimony. He may not now complain.

V. This case was tried in the district court in October 1967. The court gave the previously approved alibi instruction. It placed on defendant the burden of establishing the defense of alibi by the greater weight of the evidence bearing upon it. Timely exceptions were taken thereto.

On June 27, 1968 the United States Court of Appeals for the 8th circuit in Stump v. Bennett, 398 F.2d 111 held such an instruction oppressive to a defendant's basic constitutional rights.

In State v. Carter, Iowa, 161 N.W.2d 722, 727, decided October 15, 1968, we said:

"Our approved alibi instruction has recently come to the attention of the United States Court of Appeals, Eighth Circuit,

in Johnson v. Bennett, 386 F.2d 677 (1967) and Stump v. Bennett, 398 F.2d 111 (1968). Each is a habeas corpus proceeding appealed from the United States District Court for the Southern District of Iowa where the trial court denied a writ sought by a prisoner whose conviction we had affirmed.

"In Johnson v. Bennett the ruling of the trial court was affirmed. In Stump v. Bennett the trial court was reversed. Certiorari has been granted by the United States Supreme Court in Johnson, 390 U.S. 1002, 88 S.Ct. 1247, 20· L.Ed.2d 102 and has been requested in Stump. The constitutional question raised will no doubt be decided by the Supreme Court in the near future."

Since that opinion was filed the Supreme Court on December 16, 1968 remanded the Johnson case to the Court of Appeals for reconsideration in the light of its holding in Stump.

The Supreme Court has subsequently denied certiorari in Stump.

■ Pursuant to these pronouncements and mandates by the United States courts the alibi instruction can no longer be approved. In this case timely exceptions were taken and preserved.

The Supreme Court of the United States in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, said: " * * * a change in law will be given effect while a case is on direct review * * *."

The matter comes before us for direct review by appeal subsequent to the pronouncements in Stump, supra, and accordingly the case must be reversed and remanded. .

The case is reversed and remanded to the district court for retrial.

Reversed and remanded.

All Justices concur, except RAWLINGS and BECKER, JJ., *who concur in the re*sult and STUART, J., who dissents from Division IV, but otherwise concurs.