STATE of Iowa, Appellee,

v.

Donald G. LEONARD, Appellant.

No. 58414.

Supreme Court of Iowa.

May 19, 1976.

Charles H. Barlow, and Robert Boyd Griffith, Emmetsburg, for appellant.

Richard C. Turner, Atty. Gen., Earl W. Roberts, Jr., Asst. Atty. Gen., Roger Berkland, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, LeGRAND, and REES, JJ.

MASON, Justice.

Donald G. Leonard was charged by county attorney's information filed March 6, 1975, with delivery of a schedule II controlled substance (amphetamine) in violation of section 204.401(1)(b), The Code. The basis for the charge was defendant's sale of 1000 amphetamine tablets to special agent James Navis of the Division of Narcotics and Drug Enforcement October 19, 1974. He was convicted by a jury of the crime charged and appeals from judgment imposing sentence on this conviction.

The appeal presents the following issues for review:

1. Was defendant entrapped as a matter of law due to police use of close personal relationships to induce a sale of drugs?

2. Did the trial court err by employing in the entrapment instruction the phrase "normally law-abiding person" as opposed to "reasonable man of ordinary prudence," because the former is "confusing and prejudicial" in that a person who has admitted selling drugs cannot be a normally law-abiding person? Is this contention properly before this court due to defendant's failure to cite authority in support thereof?

3. A. Was the trial court's failure to place the burden upon the State to prove the drug sale was not an accommodation delivery properly preserved for review?

B. May the State rest its opposition to defendant's accommodation assertions upon trial testimony and depositions?

Some time before the October 19 incident Johnathan K. Davis of Laurens had agreed to assist law enforcement officers in the apprehension of area drug dealers. Davis had originally been approached by Laurens Chief of Police Les Hartshorn in this regard in exchange for the "dropping or softening" of an August 1974 possession of marijuana charge and Davis' subsequent probation status.

Mr. Davis himself was no greenhorn to the drug scene. It was adduced he had become involved with marijuana some three

to four years previous to defendant's trial. Consumption progressed to occasional use of LSD and large amounts of amphetamines, which continued until his arrest for possession of marijuana, at which time his use of drugs dropped.

Davis had met John Rider early in 1974 when both were employed by Mefferd's Industries of Laurens. The two became good friends and shared in their drug-related activities. At least some of the drugs used by Davis were purchased from Rider. Davis had no doubt he could purchase, because of this friendship, anything he wanted.

In any event, Agent Navis was not inclined to employ as an informer a person with parole or probation status, when the two first met at the cemetery in Laurens, but his mind changed, apparently, after Davis was able to procure 100 white cross tablets from John Rider. Davis had taken these pills to Chief Hartshorn "to show him I knew what I was talking about." Some time after this Agent Navis contacted Davis' probation officer who agreed to utilization of Davis as an informant.

Thus, Davis apprised Rider he had a "friend" from Des Moines who wished to purchase a "jar" (1000 pills) of amphetamines. Rider apparently did not protest in the least and contacted long-time acquaintance and friend Donald Leonard concerning the purchase, as defendant and Davis were only casually acquainted. According to defendant's testimony, Rider made no statements he simply had to acquire the pills or that the sale had to go through. Neither did Rider beg or plead with defendant.

Agent Navis met with Davis October 19 at Ware, from which they were to drive to Emmetsburg. Davis was originally accompanied by his wife, whom the agent sent home. Also on the scene was another special agent, Duane Lynch. After Davis returned without his wife, he and his car were searched whereupon the Navis-Davis duo set out for Emmetsburg in Davis' car with Lynch following. They first entered Grannies tavern in Emmetsburg but due to lack of privacy proceeded to Hamilton's bar where Navis dialed Rider's number and gave the phone to Davis, who indicated to Rider they were ready to make the purchase. Rider arrived at the tavern at 2:25 p. m. and was introduced to Navis who utilized an alias first name. He borrowed Davis' car in order to find defendant to firm up "the last minute details."

Approximately 2:55 Rider reappeared and declared defendant had the drugs and was willing to sell. Rider, however, wanted Navis to give him the money and wait for his return with the amphetamines. Navis refused, stating he feared the money would be stolen. A later discussion in Davis' car did not sway Navis so Rider told Navis and Davis to return to the tavern and await his return after discussing with defendant what should be done.

Shortly thereafter, Rider returned. Since defendant, although a "friend" of Rider, did not trust him with the drugs, a face-to-face meeting was arranged. The three drove to Five Island Lake and pulled up next to defendant's Dodge convertible. Defendant wanted $200.00 for the "jar," plus $10.00 "for his trouble," which price Navis indicated was too high. Defendant replied this was the price regardless of who was the purchaser. Navis finally agreed and the exchange took place at around 3:45 p. m.

Based upon this sale defendant was arrested March 6. After pleading not guilty, a motion to suppress alleging entrapment was filed and a hearing held thereon. April 4, 1975, Judge Underwood overruled the motion, holding entrapment had not been established as a matter of law. Trial followed and the jury found defendant guilty. The trial court denied defendant's motion for a new trial and motion in arrest of judgment.

April 25 an accommodation hearing was held. The State was satisfied to rely upon the trial court's review of "the testimony of all the State's witnesses through the record and their depositions." The prosecutor stated:

"The State has not had time or notice to call these individuals, however, I feel that

what they have testified to on trial would be the sum and substance of their testimony if they were recalled and with what understanding, Your Honor, the State would proceed at this time."

Defense counsel objected on hearsay grounds to the use of depositions (apparently from the suppression hearing) as well as a report from the Drug Abuse Study Committee set out in *State v. Vietor*, 208 N.W.2d 894 (Iowa 1973). Earlier, when the prosecutor stated he would rely upon the trial testimony and depositions, defense counsel declared:

"Your Honor, the defendant can't stipulate to that because the defendant is unaware from the decisions in the Iowa court just exactly how this hearing should be run procedure-wise."

Defendant then took the stand and testified to his friendship with Rider, which likewise induced him to make the drug sale. The trial court concluded defendant had not shown by clear and convincing evidence the sale was only an accommodation. After studying the presentence report, the court sentenced defendant to a term not to exceed five years at the State Penitentiary in Fort Madison and imposed a fine of $700.00.

I. Defendant initially contends the "inducement of the law enforcement agents was of a sufficient (means) quality to have caused a normally law abiding person to have transferred the 1000 amphetamine pills and was an objectionable police activity." It is argued the following "step-by-step form of analysis" indicates the manner in which the state, by "persuasion, inducement, and deceit" caused a law-abiding person to sell drugs.

"a. Government official, Hartshorn, conceives plan to apprehend drug trafficers in area.

"b. Government official initiates plan by contacting drug user, Davis, who is on probation and pending charges.

"c. Government official offers inducement to 'user' to cooperate in apprehension of other drug trafficers in area.

"d. 'Drug user' provides law enforcement officials with initial information regarding defendant's alleged criminal activity.

"e. Drug user re-establishes trust of old friend, Rider.

"f. In order to gain benefits of deal, user initiates criminal activity persuading his friend, Rider, to transfer 100 amphetamine pills; 'user' not certain defendant present.

"g. At time accepts 100 tablets 'user' completes unsupervised negotiation for transfer of 1,000 pills from Rider based upon close friendship, initiating arrangements for delivery the following day; again 'user' not certain if defendant present or not.

"h. 'Drug user' presents 100 pills to government officials to prove eligibility for previously arranged deal benefits.

"i. Immediately prior to transfer government official, Navis, obtains special permission to use a parolee as informant.

"j. Government official, Navis, dresses shabbily and assumes alias identity.

"k. Government officials accompany informant to pre-arranged transfer.

"l. Informant contacts friend, Rider, that he and government official have arrived to receive the 1,000 pills.

"m. Government official feigns willingness to participate in the criminal act.

"n. Defendant obtains possession of 1,000 pills from third party.

"o. Government official refuses to transfer money to friend, Rider, demanding friend arrange meeting so defendant transfers pills to government official.

"p. Government official receives 1,000 pills from defendant; in exchange the defendant accepted $210."

From the foregoing discourse as well as from the record as a whole, the following somewhat more condensed version may be gleaned:

Informant Davis had been a heavy user of drugs who curtailed his consumption fol-

lowing arrest for possession of marijuana and placement on probation. To relieve this status as well as to soften the charge, Davis assented to a police request he help in the apprehension of area drug traffickers. To this end, Davis approached his good friend Rider to make contact with defendant in order for a Des Moines "friend," an undercover narcotics agent, to purchase drugs. Rider, in turn, asked his good friend, defendant, to sell the drugs. And in this regard, Rider did not beg or make any statements to the effect the sale *must* go through. Davis accompanied Agent Navis (who had attained permission from Davis' probation officer to utilize him as an informant) to Emmetsburg where Rider, again not motivated by any pleading, agreed to help. Navis used an alias and was dressed in old clothes. After some haggling over the procedure of the sale, Navis and defendant met face-to-face and the sale was completed after some dickering over price. In short, the State utilized the services of an informant who used his friendship with a third party to arrange a purchase of drugs from a friend of that third party.

Upon this factual situation defendant posits the assertion his motion for a directed verdict, renewed at the close of evidence, should have been granted, as entrapment had been established as a matter of law. The rules pertaining to this court's review of a denial of an accused's motion for a directed verdict have been recited time and again in consonance with this statement from *State v. Menke*, 227 N.W.2d 184, 188 (Iowa 1975):

"This court has consistently held, where an accused moves for a directed verdict the evidence must be viewed in a light most favorable to the State and the case should be submitted to the jury if there is any evidence reasonably tending to support the charge. * * * [citing authority].

"It is equally well settled, when an accused challenges sufficiency of the evidence to sustain a guilty verdict the evidence is again viewed most favorably to the State, and the court accepts as established all reasonable inferences tending to support the jury action. Furthermore, only the supporting evidence need be considered, whether contradicted or not. * * * [citing authorities]."

. The foregoing pronouncement is repeated in *State v. Rosewall*, 239 N.W.2d 171, 173 (Iowa 1976).

More relevant, however, is this statement from *State v. Mullen*, 216 N.W.2d 375, 382 (Iowa 1974):

"We hold the trial court shall determine the question as a matter of law where there is no dispute as to the facts or the inferences to be drawn from them but shall submit the issue to the jury where the defense is properly raised and there is a dispute in the evidence relating to the operative facts or the inferences to be drawn therefrom."

The foregoing principle was announced in *Mullen* in response to the specific question "whether the objective test we have adopted today should be applied by the court or by the jury." In this connection the court pointed out that "certainly the jury can weigh some conduct which might induce 'a normally law-abiding person' to commit a crime as surely as it can weigh (in a tort case) the required conduct of a 'reasonably prudent person.'"

In *State v. Baumann*, 236 N.W.2d 361, 365 (Iowa 1975), we again relied on the rationale just quoted and declined to depart from the pronouncement in *Mullen* although urged to do so by Baumann who insisted that the trial court should be the sole arbiter of issues of fact and law relating to the entrapment issue.

Iowa thus became one of several jurisdictions which has adopted the "objective" standard for determination of an entrapment question. This test, embraced in *State v. Mullen*, supra, is derived from section 702 of the National Commissions Study Draft of a New Federal Criminal Code (1970) which provides:

"Entrapment occurs when a law enforcement agent induces the commission of an offense, using persuasion or other means likely to cause normally law-abiding persons to commit the offense. Conduct mere-

ly affording a person an opportunity to commit an offense does not constitute entrapment." See *State v. Mullen*, 216 N.W.2d at 382; *State v. Deanda*, 218 N.W.2d 649, 650 (Iowa 1974); and *State v. Baumann*, 236 N.W.2d at 363.

■ Under the subjective test the inquiry is focused upon the particular mental and character traits of the defendant whereas the objective test adopted in *Mullen* focuses on the actions of law enforcement agents rather than predisposition of a specific defendant. *State v. Baumann*, 236 N.W.2d at 363. Under this test the propensities and predisposition of the particular defendant are irrelevant. Instead, the test uses the "reasonable person" concept—a normally law-abiding person. In other words, the police conduct must be sufficiently provocative to induce the normally law-abiding person to commit a crime. Instigations which would induce only a person engaged in an habitual course of unlawful conduct for gain or profit do not constitute entrapment.

■ The facts, set out earlier in this opinion, when assessed in light of the objective test do not establish as a matter of law that the activities of the law enforcement agents in this particular case were sufficiently provocative to induce the normally law-abiding person to commit the crime charged. *State v. Mullen*, 216 N.W.2d at 382–383; *State v. Baumann*, 236 N.W.2d at 364.

The trial court was correct in overruling defendant's motion for a directed verdict.

■ Although this court has adopted the objective test it is to be noted that we have retained the proposition conduct which merely affords one an opportunity to commit an offense does not constitute entrapment. Furthermore the adoption of the standard does not, in the words of Mr. Justice Stewart dissenting in *United States v. Russell*, 411 U.S. 423, 445, 93 S.Ct. 1637, 1649, 36 L.Ed.2d 366, 381, " * * * mean, of course, that the Government's use of undercover activity, strategy, or deception is necessarily unlawful. * * * [citing authority]. Indeed, many crimes, especially so-called victimless crimes, could not otherwise be detected. Thus, government agents may engage in conduct that is likely, when objectively considered, to afford a person ready and willing to commit the crime an opportunity to do so. * * * [citing authorities]."

■ That the government may use "artifice and stratagem" to apprehend those engaged in criminal activity is supported by *United States v. Edwards*, 366 F.2d 853, 868 (2 Cir. 1966), cert. den., 386 U.S. 908, 87 S.Ct. 852, 17 L.Ed.2d 782; *United States v. Banks*, 475 F.2d 1367, 1369 (5 Cir. 1973); *United States v. Carroll*, 518 F.2d 187, 188 (6 Cir. 1975); *United States v. Sosa*, 379 F.2d 525, 527 (7 Cir. 1967), cert. den., 389 U.S. 845, 88 S.Ct. 94, 19 L.Ed.2d 111; *United States v. Gurule*, 522 F.2d 20, 23 (10 Cir. 1975).

Michigan, another state which as alluded to above has approved the objective standard, has aptly stated:

" * * * The use of undercover agents and the establishment of the confidential relationship with suspected drug peddlers are perhaps the only weapons by which society can combat the traffic which exacts such a devastating toll of its victims and society in general. It is a rare instance in which drugs are sold to strangers." *People v. Henley*, 54 Mich.App. 463, 221 N.W.2d 218, 221.

In this connection we call attention to this statement in *State v. Ostrand*, 219 N.W.2d 509, 512 (Iowa 1974):

" * * * On the one hand, entrapment cannot result from inducements merely by some private individual or by an accomplice. * * * [citing authority]. Thus, if a private individual puts another person up to the commission of a crime, that other person cannot successfully urge entrapment even though the private individual informs law officer that the crime is going to be committed. * * * [citing authorities]. On the other hand if law officers can use an individual to help them arrange the commission of a crime by another person, the

officers cannot disclaim the inducements such individual offers in the course of his efforts for the officers. * * * [citing authorities]." See also *State v. Lamar*, 210 N.W.2d 600, 606 (Iowa 1973); *State v. Davis*, 175 N.W.2d 407, 410 (Iowa 1970); *State v. Fiechter*, 88 N.M. 437, 540 P.2d 1326, 1327; *United State v. Conversano*, 412 F.2d 1143, 1148 (3 Cir. 1969), cert. den., 396 U.S. 905, 90 S.Ct. 219, 24 L.Ed.2d 181; and *United States v. Gonzales*, 461 F.2d 1000, 1001 (9 Cir. 1972), cert. den., 409 U.S. 914, 93 S.Ct. 230, 34 L.Ed.2d 175.

■ II. The next issue stems from defendant's contention concerning use of the phrase "normally law-abiding person" in the entrapment instruction. It is argued the trial court should have substituted the phrase "reasonable man of ordinary prudence" because "the defendant must admit to the sale or transfer and once he admits to the crime, he cannot be a 'normally law-abiding' member of the community."

The State counters the phrase used is "clearly supported by past decisions of this court" and that utilization of defendant's requested wording would constitute "a step backward to the subjective approach to the problem of entrapment. It would mean the adoption of a standard of relative significance wherein police conduct deemed acceptable in one case, would be unacceptable under a different factual setting."

Defendant's one-half page argument in this regard is unsupported by citation of authorities. Thus, this court is not compelled to review this assignment of error. *State v. Mattingly*, 220 N.W.2d 865, 871 (Iowa 1974); *State v. Glenn*, 234 N.W.2d 396, 401 (Iowa 1975); and authorities cited.

Defendant's contention is not entitled to any recognition by this court.

■ III. In the third issue presented for review defendant invites the court to adopt reasoning of the dissent in *State v. Vietor*, 208 N.W.2d 894, 899 (Iowa 1973), wherein it was urged the State, at an accommodation hearing pursuant to section 204.410, The Code, should bear the burden to prove beyond a reasonable doubt a defendant did not deliver drugs as an accommodation.

In *Vietor*, 208 N.W.2d at 898–899, a 5–4 majority of this court held section 204.-401(1), The Code, created a separate and distinct crime without regard to the purpose or motive of the deliverer; section 204.410 established only a postconviction sentencing procedure by which the convicted person may, if he so desires, offer evidence in mitigation of sentence; and therefore the challenged statutes did not suffer from the constitutional infirmities urged by each defendant in *Vietor*. Both statutes are set out in *Vietor* at page 896.

This court continued to follow our decision in *Vietor* in *State v. Frank*, 214 N.W.2d 915 (Iowa 1974) and *State v. Deanda*, Iowa, 218 N.W.2d 649.

However, November 24, 1975, 25 days after defendant's written brief and argument was filed in this matter, this court decided *State v. Monroe*, 236 N.W.2d 24 (Iowa 1975), and held that in a proceeding under section 204.410 the burden is upon the state to prove beyond a reasonable doubt that the defendant did not "deliver or possess with intent to deliver a controlled substance only as an accommodation to another individual and not with intent to profit thereby nor to induce the recipient or intended recipient of the controlled or counterfeit substance to become addicted to or dependent upon the substance." We further held that a defendant is entitled to have a jury decide the issue in question in that section. *Id.* at 37.

Defendant has since filed a reply brief arguing the *Monroe* reasoning is applicable to the instant case.

In his reply brief defendant first maintains he properly presented and preserved the error giving rise to this issue "during the postconviction proceedings." In support of this contention he refers the court to the record. At the point specified in the record the trial court referred to defendant's application for hearing prior to sentencing and inquired of counsel if they were ready to proceed. The following record was made:

"MR. BARLOW [defense counsel]: Yes, Sir.

"THE COURT: Is the State ready to proceed?

"MR. BROWN [prosecutor]: Your Honor, the State would proceed with the understanding that the Court would be able to or be allowed to review the testimony of all the State's witnesses through the record and their depositions.

"MR. BARLOW: Your Honor, the defendant can't stipulate to that because the defendant is unaware from the decisions in the Iowa Court just exactly how this hearing should be run procedure-wise."

This objection did not properly preserve for review defendant's first contention.

In the alternative defendant argues even if error has not been preserved, "an objection to the absence of jury deliberation on the accommodation elements and an objection to the defendant carrying the burden to prove an accommodation would have been overruled by the trial judge as it would have been apparent error for the trial judge to have sustained an objection on those grounds." This contention is based upon *State v. Wisniewski*, 171 N.W.2d 882 (Iowa 1969).

It is at the outset clear the *Monroe* court did not intend the decision to apply to cases wherein error was not preserved. As to the decision's retroactivity, this court stated:

"(1) The constitutional requirement concerning the burden of proof announced in this case is completely retroactive.

"(2) The constitutional requirement concerning the right to a jury determination is applicable only to trials or retrials begun after the date of the filing of this opinion.

"(3) Relief flowing from the constitutional adjudication in this opinion is available only in (a) the case at bar, (b) cases now pending on appeal *where error has been properly preserved at trial*, and (c) cases in which timely appeal is hereafter taken and in which error has been properly preserved." 236 N.W.2d at 39. (Emphasis supplied).

Defendant does not discuss the effect of the foregoing statement in asserting the applicability of *Wisniewski*. He argues the rule requiring issues to be presented in the trial court before they can be made the basis for reversal [see *State v. Wisher*, 217 N.W.2d 618 (Iowa 1974) and *State v. Mathias*, 216 N.W.2d 319 (Iowa 1974)] is not apposite here because "the present controversy surrounds the objection raised in a 'post-conviction hearing.' "

Before determining whether the constitutional principles announced in *Monroe* were to be given retroactive effect or whether they should be made to operate prospectively only, the court in reaching its conclusion stressed four factors which have been reiterated time and again in decisions of the United States Supreme Court in resolving the problem. They are (1) the purpose of the new standard; (2) reliance placed on prior decisions by law enforcement bodies; (3) the effect upon administration of justice of retroactive application of the new rule; and (4) how seriously the invalid rule affected the very integrity of the fact finding process. See in this regard *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 and *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

In *Johnson v. State of New Jersey*, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, the Court was called upon to determine whether the principles announced in *Escobedo v. State of Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 and *Miranda v. State of Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, should be applied retroactively. The opinion, 384 U.S. at 726, 86 S.Ct. at 1777, 16 L.Ed.2d at 888, discusses previous decisions of that Court which dealt with the problem of retroactivity in connection with other constitutional rules of criminal procedure and concluded that the rule announced in *Escobedo* was to be applied prospectively and was available only to persons whose trials began after June 22, 1964, the date on which *Escobedo* was decided. In reference to the guidelines set down in *Miranda* it was determined those were available only

to persons whose trials had not begun as of June 13, 1966.

The Court listed the four factors set out above and stated the New Jersey Supreme Court's invocation of a state procedural rule to bar reconsideration of the petitioner's coerced confession claim was " * * * an adequate state ground which precludes us from testing the coerced confession claim * * *." *Id.*, 384 U.S. at 735, 86 S.Ct. at 1782, 16 L.Ed.2d at 893.

In *Tehan v. United States*, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453, the Court, in dealing with *Griffin v. State of California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 which involved comment on a defendant's failure to testify, asked whether the purpose of the new rule would be advanced by retroactive application. It was stated the self-incrimination privilege does not protect the fact finding process but rather preserves the integrity of the judicial system. The Court noted that the principle announced in *Griffin* did not require retrospective application since the effect on the administration of criminal law would be "so devastating as to need no elaboration."

*Williams v. United States*, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388, a plurality opinion, concerned the retroactive application of *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 which was decided June 23, 1969. This statement appears in *Williams*, 401 U.S. at 651–652, 91 S.Ct. at 1151–1152, 28 L.Ed.2d at 394:

" * * * Relying on prior cases, we firmly rejected the idea that all new interpretations of the Constitution must be considered always to have been the law and that prior constructions to the contrary must always be ignored. Since that time, we have held to the course that there is no inflexible constitutional rule requiring in all circumstances either absolute retroactivity or complete prospectivity for decisions construing the broad language of the Bill of Rights. Nor have we accepted as a dividing line the suggested distinction between cases on direct review and those arising on collateral attack. Rather we have proceeded to 'weigh the merits and demerits in each case

by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' * * * [citing authority]."

The Court indicated that where the fact finding process is substantially impaired, neither good faith reliance nor severe impact on the administration of justice is sufficient to require prospective application.

In *United States v. Peltier*, 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374, the Court listed the *Stovall* criteria and stressed the integrity of the fact finding process. If the old rule does not affect that process the new rule should be given prospective application.

In *Michigan v. Payne*, 412 U.S. 47, 55–56, 93 S.Ct. 1966, 1971, 36 L.Ed.2d 736, certiorari was granted to decide whether the due process holding of *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 was to be given retroactive effect. In reaching its conclusion the Court stated that "although the remaining factors—reliance and burden on the administration of justice—have been regarded as having controlling significance 'only when the purpose of the rule in question did not clearly favor either retroactivity or prospectivity,' * * * [citing authority], those considerations also support the nonretroactivity of *Pearce*. The result in *Pearce* was not 'foreshadowed' by any prior decision of this Court. * * * Nor could it be said that the Court's decision was clearly forecast by any trend of lower court decisions."

In *Parker v. South Carolina*, 397 U.S. 790, 798, 90 S.Ct. 1458, 1463, 25 L.Ed.2d 785, the Court held a state procedural rule requiring objection to composition of grand jury be raised by motion to quash the indictment prior to the guilty plea " * * * would constitute an adequate state ground precluding our reaching the grand jury issue if this case were here on direct review. * * * [citing authority]."

In *Bassett v. Smith*, 464 F.2d 347, 349 (5 Cir. 1972), dealing with alibi instruction, it was noted the possibility of error in the

truth finding process was outweighed by the adverse impact retroactivity would have on the administration of justice and good faith reliance. The circuit court said, "Where the Court has 'been unable to conclude that the use of such a "condemned practice" in past criminal trials presents *substantial likelihood* that the results of a number of those trials were factually incorrect, [it has] not accorded retroactive effect to the decision condemning that practice.'" (Emphasis supplied in *Bassett*). In this regard see *Gissendanner v. Wainwright*, 482 F.2d 1293 (5 Cir. 1973), where it was noted the case holding it improper to place the burden of proof on defendant as to alibi was not retroactive.

In *Wainwright v. Stone*, 414 U.S. 21, 24, 94 S.Ct. 190, 193, 38 L.Ed.2d 179, the Court quoted from *Great Northern R. Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360, where Justice Cardozo noted, "A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions."

■ Under the United States Constitution we are neither required to apply, nor prohibited from applying a decision retrospectively. *Linkletter v. Walker*, 381 U.S. at 629, 85 S.Ct. at 1738, 14 L.Ed.2d at 608. See also *State v. Monroe*, 236 N.W.2d at 37–38.

■ In view of the principle announced by Justice Cardozo which was quoted with apparent approval in *Wainwright* it would appear this court has the power to set forth its own standard of retroactivity of a new rule.

This court has frequently and consistently held matters not raised in the trial court, including constitutional questions, cannot ordinarily be effectively asserted for the first time on appeal as a basis for reversal. *State v. Cooper*, 217 N.W.2d 589, 592 (Iowa 1974); *State v. Ritchison*, 223 N.W.2d 207, 213 (Iowa 1974).

There is a legitimate interest and sound public policy to be preserved by a procedural rule which requires that the trial court and this court be apprised of the questions of law involved in the manner prescribed by our decisions. See *Henry v. State of Mississippi*, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408.

■ We adhere to the view specifically stated in *Monroe*, 236 N.W.2d at 39, that "relief flowing from the constitutional adjudication in this opinion is available only in (a) the case at bar, (b) cases now pending o appeal where error has been properly preserved at trial, and (c) cases in which timely appeal is hereafter taken and in which error has been properly preserved."

■ Defendant failed to properly preserve at trial the contentions he now urges as a basis for reversal. Hence, this assignment presents nothing for review.

*State v. Wisniewski*, Iowa, 171 N.W.2d 882, relied on by defendant as a basis for reversal, is factually distinguishable. The decision in the cited case dealt with the question whether *Wisniewski* could rely on this court's decision in *State v. Galloway*, 167 N.W.2d 89 (Iowa 1969), in seeking reversal when he failed to properly preserve error at trial. *Galloway* was filed more than a year after trial in *Wisniewski*. Galloway had taken timely exceptions to the giving of an alibi instruction which had withstood all assaults following *State v. Stump*, 244 Iowa 1181, 119 N.W.2d 210, 1963, thus properly preserving any alleged error for review. However, no mention was made in *Galloway* as to whether the new principle announced there was to be given retroactive effect or whether it should be made to operate prospectively only. In contrast, the retroactive effect of *Monroe* was specifically limited to cases in which error had been properly preserved at trial.

*Wisniewski* was correct as applied to the factual circumstances presented there when viewed in the light of *Galloway*. This is not the situation we now have before us. *Wisniewski* does not help defendant here.

III. A distinct aspect of this third issue presented for review is defendant's contention the trial court improperly allowed the State to rely upon the previous trial testimony as well as depositions (presumably defendant's own discovery depositions taken from Agent Navis and Duane Lynch) to oppose defendant's own testimony at the accommodation hearing pursuant to section 204.410, The Code.

Defendant has not referred the court to authorities in support of his arguments.

Defendant objected to use of the *depositions* because they constituted hearsay. Clearly, the objection set out earlier in relation to use of the previous *testimony* was not specific. Furthermore, defendant's argument on appeal consists of the contention the use of testimony and depositions "violates defendant's due process protections embodied in the 14th Amendment to the United States Constitution and is contrary to the express language of Section 204.410, Code of Iowa" in that there is no provision therein "for the admission of evidence by depositions or even the admission of evidence from previous trial stage of proceedings."

Apparent, therefore, are the facts (1) defendant shifted his argument as to the *depositions* between the trial court and this court and (2) no specific objection was lodged why the *testimony* was inadmissible. And, "when the admission or exclusion of evidence is challenged in the trial court our adversary system imposes the burden upon counsel to make a proper record to preserve error. It is elementary that unless reasons for the objection are obvious an objection to offered evidence must be sufficiently specific to advise the trial court why it is inadmissible and enable opposing counsel to take proper corrective measures to remedy the defect if possible. The court to which the evidence is offered is entitled to know on what grounds it is challenged and should not be left to speculate as to whether the evidence is in fact subject to some infirmity which the objection does not point out. A specific objection, if overruled, cannot avail the objector except as to the ground specified since the court is not bound to look beyond the ground of the objection thus stated. Every ground of exception which is not particularly specified is to be considered abandoned. * * * [citing authorities]." *State v. Droste*, 232 N.W.2d 483, 487 (Iowa 1975).

Under the quoted statement the contention bearing upon previous testimony is not properly before this court. Since the objection to the depositions was based upon hearsay at trial and due process and the statute here, the *Droste* statement likewise dictates the contentions are not properly before the court.

Defendant's contentions giving rise to this aspect of his third assignment present nothing for review.

The case is—Affirmed.