STATE of Iowa, Appellee,

v.

Duane MYERS, Appellant.

No. 84–1908.

Supreme Court of Iowa.

Feb. 19, 1986.

Charles L. Harrington, Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., David L. Dorff, Asst. Atty. Gen., James A. Smith, Co. Atty., and Nan Horvat, Asst. Co. Atty., for appellee.

SCHULTZ, Justice.

Defendant appeals from his conviction and sentence for indecent contact with a child. *See* Iowa Code § 709.12(2) (1983). He contends that the trial court erred in two respects: (1) in overruling his objections to the admission of expert testimony that children almost never lie about sexual abuse; and (2) in failing to grant a mistrial after a police officer made reference to the reputations of persons with whom defendant resided. We conclude that the trial court abused its discretion in admitting the challenged expert testimony, thereby depriving defendant of a fair trial. We there-

fore reverse the conviction and remand for a new trial.

The State charged defendant with having indecent contact with an eight-year-old female victim (the complainant) one night in April 1984. The incident allegedly involved sexual molestation which occurred while the complainant's five-year-old sister and she were asleep in a hide-a-way bed at the home of an acquaintance of their mother.

At trial the prosecution first called as witnesses the complainant, her sister, and other witnesses who gave testimony tending to support each element of the charge. The prosecution then elicited opinion testimony of two expert witnesses: Martha Davis, a prosecution witness who was the principal of the elementary school attended by the complainant; and Mary Jane Mosher, a child abuse investigator employed by the Iowa Department of Human Services whom the defendant called as a witness and the prosecution cross-examined. The essence of their challenged testimony was that children generally tell the truth when they report that they have been sexually abused. Defendant has not challenged the qualifications of these two expert witnesses, but he contends that their opinions concerning the general credibility of children reporting sexual molestation was not a proper subject for expert testimony.

Davis, the school principal, testified:

Q. During the course of your investigation and your work with sexually abused children, have you formed an opinion as to whether or not children lie about these particular kinds of incidents?

....

A. Yes, I have. First of all, I think it relates to two areas. One would be the statistics that I've learned of by going to special training sessions on this matter of child sexual abuse.

Statistically, the statistics show that children have not lied in this area. For example, we were given a statistic from Polk County that—I'm referring to the Polk County Child Sexual Abuse Model that is utilized in the case of an investigation—and out of about, I think it was,

75 cases, there was only one out of prosecuted cases where the child was not telling the truth.

And we've been given other statistics along this line. At our symposium last Wednesday that was emphasized again and again, children do not lie about this type of matter.

And the second part of my opinion has to do with my experiences, which has been the entire time I've been at [the elementary school], for three years, that there has not been a child who has lied about something like this. So I do believe the children.

Mosher, the child abuse investigator, had interviewed the complainant about this incident and was called as a witness by the defendant. On direct examination she related what the complainant had told her, a report somewhat inconsistent with the complainant's trial testimony. On cross-examination of Mosher the prosecution developed the following testimony:

Q. Have you formed an opinion during the course of your investigations with regard to sexual abuse cases whether or not children in general tell the truth about these particular kinds of crimes?

A. Yes I have.

Q. And what is that opinion?

....

A. In all the years I've worked, which is sixteen, I have only had one child that lied to me about sexual abuse, and it is my opinion that it is very rare for a child to lie about this subject.

Q. Did you form your opinion based upon certain statistics or facts that you have at your recollection?

A. I did read a statistic based on the Giaretto Program in San Jose, which was one of the first programs in the sexual abuse investigation, and their finding was that perhaps one in 2,500 children who were interviewed did not tell the truth, which would make it exceedingly rare.

Defendant made timely objection that the testimony of Davis and Mosher was not a

proper subject for expert opinion testimony. Before either witness expressed an opinion about whether children in general truthfully report incidents of child abuse, defendant's counsel objected by stating:

Your Honor, and I do not know what her opinion is, but there is no theory of evidence, there is no theory of law, and it is just directly prohibited by the Iowa Supreme Court to ask. No one can be an expert in that area. One cannot give an opinion in that area, your Honor.

Objecting to the testimony of Mosher, defendant's counsel stated:

Your Honor, I would like to interpose an objection for the record. That is not the proper subject for expert opinion.

The Iowa Supreme Court has said in *State v. Galloway* [275 N.W.2d 736, 740 (Iowa 1979) (specially concurring opinion of seven justices)] that the jury, of course, can listen to facts, but it is the jury's job to determine credibility, and it is not—it is—just simply is not a proper subject for expert testimony.

Counsel's objection that no person can be an expert in this area, and his specific reference to the *Galloway* opinion, alerted the trial court to the important concerns which we here express regarding this testimony. We believe that defendant properly preserved error on this matter at trial. *See State v. Nimmo*, 247 N.W.2d 228, 231 (Iowa 1976). The qualifications of these two witnesses is not in issue; the subject matter of their expert opinion testimony is our focus. The fundamental question we must answer is whether the prosecution met its burden to show that the subject matter of the testimony is admissible pursuant to Iowa Rule of Evidence 702:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

We are generally committed to a liberal rule which allows opinion testimony if it will aid the jury in screening the properly admitted evidence to ascertain the truth. *State v. Hall*, 297 N.W.2d 80, 84 (Iowa 1980). When a trial court has exercised its discretion to admit expert testimony, we will reverse only if we find an abuse of that discretion and prejudice. *Id.* at 86; *State v. Morrison*, 323 N.W.2d 254, 256 (Iowa 1982). An abuse of discretion occurs when the trial court's ruling is based on untenable grounds. *Morrison*, 323 N.W.2d at 256. Consequently, when a timely and specific objection under rule 702 challenges the propriety of expert testimony on a particular subject, the proponent has the burden to establish that the testimony is admissible.

With these general principles in mind, we examine the expert testimony to determine its purpose and effect. The State urges that the testimony "was offered merely as an aid to the jury in understanding the issue of the truthfulness of children, *in general*, who claim to have been sexually abused." (Emphasis in original.) When viewed in light of the factual issues, this contention is unrealistic. The credibility of the eight-year-old child was a fighting issue between the parties. The gist of the principal's testimony was that during her three-year period as principal no child had lied to her about being sexually abused; the investigator opined that in 16 years of work she had only one child lie to her about sexual abuse. The prosecutor's obvious purpose in offering this expert testimony was to bolster the complainant's credibility. We believe the effect was comparable to telling the jury that the complainant would not lie about matters concerning sexual abuse.

The issue presented in this appeal is whether expert testimony that a witness would not lie is admissible under rule 702. We have not been cited nor do we find any of our cases that are on point on this issue. Our case law does provide some assistance, however.

Initially, we observe that Iowa Rule of Evidence 702 is of recent origin. It was prescribed and reported by this court to the legislature and enacted in that form taking

effect July 1, 1983. *See* 1983 Iowa Acts ch. 219; Iowa Code § 684.19. Rule 702 merely states our prevailing case law. Iowa R.Evid. 702 committee comment 1983.

We first examine *Galloway,* the authority defendant called to the court's attention in his objection. A majority of this court in a special concurrence decided that the "trial court on retrial would be justified in sustaining an objection" to an offer of expert opinion testimony concerning the accuracy of eyewitness identification in general, even though the eyewitness' identification was in question. *Galloway,* 275 N.W.2d at 741 (Reynoldson, C.J., concurring specially). We stated:

> In the final analysis, jurors daily experience the fragility of their own memories. They know recollection fades with time and is affected by the relative significance of the incident. Probably most have experienced on several occasions their own or another's misidentification in social or business relationships. Explanation of the scientifically identified mechanisms which bring about memory decay may be of academic interest, but it is of little aid to the jury in judging reliability of the particular eyewitness identification before them.

*Id.* We then commented on the cost and time which would be required by the admission of such opinions and concluded: "We should be slow to approve a rule which would inject another group of expensive forensic experts into an *area historically reserved as a jury's domain."* *Id.* at 742 (emphasis added). The holding by the majority in *Galloway* allows a restriction on the use of expert opinions offered to attack the credibility of witnesses, but it falls short of deciding the admissibility of an expert opinion that directly comments on the truthfulness of a witness or whether the trial court would err as a matter of law in admitting such evidence.

Iowa has long been a leader in the liberal use of expert witnesses presenting opinion evidence. The seminal case in Iowa jurisprudence on the use of expert opinions is *Grismore v. Consolidated Products Co.,*

232 Iowa 328, 5 N.W.2d 646 (1942). In *Grismore* we set forth liberal rules concerning the admissibility of expert opinion testimony and these rules are the genesis for most of our modern case law in this area. *Id.* at 339–61, 5 N.W.2d 654–63. We also expressed guidelines for limitations on the admission of expert opinions when we stated:

> Of course, we are not to be understood as saying that opinion testimony should be received as to all matters. It should be received only as to such matters as are the proper subjects of opinion testimony. No witness should be permitted to give his opinion directly that a person is guilty or innocent, or is criminally responsible or irresponsible, or that a person was negligent or not negligent, or that he had capacity to execute a will or deed.... But the reason is that such matters are not subjects of opinion testimony. They are mixed questions of law and fact.

*Id.* at 361, 5 N.W.2d at 663. Expert opinions regarding whether a witness testified truthfully bear similarity to expressing an opinion on the defendant's guilt or innocence. Typically, the truthfulness of the victim or the accused bears heavily upon, and is intertwined with, the guilt or innocence of the accused. Both matters, credibility of a witness and the determination of the guilt or innocence of the accused, are reserved solely for the fact finder. Does this similarity require a court to exclude expert opinion testimony regarding the truthfulness of a witness?

Although some of our other cases aid us in addressing this issue, they do not provide a complete answer. In *State v. Galloway,* 167 N.W.2d 89, 93 (Iowa 1969), the criminal defendant signed a waiver for taking a polygraph test and agreed that the results could be admitted into evidence. Because of the defendant's prior consent, we held admissible the polygraph operator's opinion that the five answers given by the defendant in reply were untrue. *Id.* at 94. However, we noted that the operator could not be asked or permitted to answer

directly whether the defendant was involved in the shooting, even though defendant denied involvement in the shooting in one of his five replies. *Id.* We stated that "[i]f defendant was involved in the shooting in this case he was involved in a murder, in other words, guilty." *Id.* We reversed a drug delivery conviction in *State v. Oppedal,* 232 N.W.2d 517, 524 (Iowa 1975), when an officer opined that a quantity of marijuana seized from defendant was possessed by him "with intent to deliver," an essential element of the crime. We stated that the officer's opinion was "tantamount to permitting the witness to testify that he had an opinion as to the ultimate fact of defendant's guilt or innocence." *Id.* We have placed similar limitations on other opinion testimony. *See Nimmo,* 247 N.W.2d at 230; *State v. Swartz,* 244 N.W.2d 553, 555 (Iowa 1976); *State v. Ogg,* 243 N.W.2d 620, 621 (Iowa 1976); *State v. Droste,* 232 N.W.2d 483, 488–89 (Iowa 1975); *State v. Horton,* 231 N.W.2d 36, 38 (Iowa 1975).

■ These cases reveal that we generally will not admit expert opinion testimony that essentially passes on the guilt or innocence of the defendant. These inadmissible opinions go a step beyond merely aiding the fact finder in understanding the evidence and actually invade the exclusive domain of the jury, that is, the determination of the guilt or innocence of the accused. Additionally, expert opinions on the truthfulness of a witness should generally be excluded because weighing the truthfulness of a witness is a matter reserved exclusively to the fact finder.

Other jurisdictions hold that it is improper in criminal cases to permit a witness, expert or otherwise, to express an opinion as to whether another witness is telling the truth. *See, e.g., State v. Sullivan,* 2 Conn. Cir. 412, 199 A.2d 709, 713 (1964) (impermissible for doctor to opine as to reliability of lay witness' opinion regarding defendant's sobriety); *State v. Perkins,* 444 N.E.2d 878, 879 (Ind.App.1983) (psychiatrist not allowed to testify that it was his "strong impression" that defendant was

telling the truth); *Commonwealth v. Carter,* 9 Mass.App. 680, 403 N.E.2d 1191, 1193 (1980) (doctor's opinion that mildly retarded child was telling the truth held objectionable); *State v. Williams,* 34 N.C. App. 408, 238 S.E.2d 668, 672 (1977) (psychiatrist's opinion that he considered defendant reliable properly excluded); *Beishir v. State,* 522 S.W.2d 761, 765 (Mo. 1975) (expert testimony that a witness is not truthful inadmissible); *State v. Correra,* 430 A.2d 1251, 1255 (R.I.1981) ("No witness, expert or otherwise, may testify that another witness or the defendant is lying or faking. This is an area within the exclusive province of the jury."); *Hopkins v. State,* 480 S.W.2d 212, 220–21 (Tex.Crim. 1972) (psychiatric evidence not admissible regarding credibility of witness); *contra State v. Kim,* 64 Haw. 598, 645 P.2d 1330, 1334–37 (1982) (not an abuse of discretion to permit a child psychiatrist to testify that he found complainant's account of alleged rape to be believable); *People v. Cowles,* 246 Mich. 429, 224 N.W. 387, 388 (1929) (medical doctor's opinion in rape case that complainant "was a pathological falsifier, a nymphomaniac, and a sexual pervert" admissible for impeachment purposes). Nevertheless, expert opinions as to organic or mental disorders of a witness are admissible for the purpose of challenging the witness' credibility. *Jones v. State,* 232 Ga. 762, 208 S.E.2d 850, 853 (1974); *see also Mangrum v. State,* 227 Ark. 381, 299 S.W.2d 80, 84 (1957); *People v. Neely,* 228 Cal.App.2d 16, 39 Cal.Rptr. 251, 253 (1964).

The State maintains that the expert opinions aided the jury in understanding the evidence and did not invade the jury's function of weighing witness credibility. Basically, the State urges that child sexual abuse cases are different and deserve special treatment because jurors may not have special knowledge about the truthfulness of children who claim someone has sexually abused them. The State urges in its brief: "Certainly, a professional child sexual abuse investigator and an elementary school principal are in a better position to evaluate the truthfulness of such allega-

tions that those of us who rarely, if ever, are personally involved in such cases."

The court in *State v. Kim,* 64 Haw. 598, 645 P.2d 1330 (1982), essentially adopted the State's contention. In that case defendant was charged with raping his thirteen-year-old step-daughter and the credibility of the complaining witness was in issue. On appeal, the court held the trial court did not abuse its discretion in allowing a child psychiatrist to opine that the witness' conduct, along with her mental and emotional conditions, were approximately the same as other child rape victims and that he found the witness' account to be believable. *Id.* 645 P.2d at 1333–38. The court concluded that the opinions assisted the jury to understand the evidence and the probative value of the testimony outweighed its prejudicial effects. *Id.* at 1336.

Recent cases concerning the admissibility of expert evaluation of the complainant as a method of proving forcible rape shed some light on the issue in the present case. In one case, expert testimony that the complaining witness was suffering from post-traumatic stress disorder known as "rape trauma syndrome" was admissible as evidence that a forcible assault did take place. *State v. Marks,* 231 Kan. 645, 647 P.2d 1292, 1299 (1982). However, a majority of the courts have rejected this reasoning and hold that it is error to admit such opinions. *See, e.g., People v. Bledsoe,* 36 Cal.3d 236, 203 Cal.Rptr. 450, 460, 681 P.2d 291, 301 (Cal.1984) (expert opinion as to rape trauma syndrome was inadmissible to prove that rape occurred because of unreliability); *State v. Saldana,* 324 N.W.2d 227, 230–31 (Minn.1982) (error to admit expert opinion on rape trauma syndrome because evidence does not assist in fact-finding function and has not reached a level of reliability that exceeds the common sense evaluation of jury deliberations); *State v. Taylor,* 663 S.W.2d 235, 241 (Mo.1984) (error to admit expert's opinion of rape trauma syndrome as it is implied opinion that victim told truth in describing the rape, there is a risk the jury will regard opinion as dispositive on the issue of consent, and the possibility of prejudice outweighs its probative value). In *Taylor* the Missouri court described the evidence as a direct attack on credibility and an invasion on the function of the jury as follows:

> Clearly, the psychiatrist's specific statement that the victim did not fantasize the rape was an express opinion about her credibility, and his entire testimony that the victim suffered from rape trauma syndrome carried with it an implied opinion that the victim had told the truth in describing the rape. Further, the psychiatrist's testimony that he was specifically trained to evaluate verbal and nonverbal responses lends a special reliability to his opinion of the victim's credibility.... The jury was competent to determine the victim's credibility; therefore, Dr. Amanat's testimony designed to invest scientific cachet on the critical issue was erroneously admitted. Otherwise, trials could degenerate to a battle of experts expressing opinion on the substance of witness' veracity.

663 S.W.2d at 241 (citations omitted).

Also helpful are those cases that examine the nature of admissible expert opinions in child sexual abuse cases. Although the California court in *Bledsoe* held that an opinion that a child suffered rape trauma syndrome was inadmissible to prove a rape occurred, expert testimony on the after effects of rape, such as the emotional and psychological trauma that a victim suffers, may be admissible. 681 P.2d at 301. In a sexual conduct case involving a six-year-old child, the Minnesota court found no abuse of discretion in the admission of expert testimony regarding the characteristics or traits typically observed in sexually abused children. *State v. Myers,* 359 N.W.2d 604, 608–10 (Minn.1984). In *Myers,* the expert's opinion that the child's allegations were truthful was properly admitted by the trial court because the defendant had waived his right to object to this testimony by "opening the door" in his cross-examination. *Id.* at 611. The court indicated, however, that it would reject such testimony regarding the truth or falsity of a witness' allegation

about a crime because the "expert's status may lend an unwarranted 'stamp of scientific legitimacy' to the allegations." *Id.* The Oregon court allowed expert testimony as to the reaction of young children that have been raped by a family member and that the complainant's behavior was typical of most victims. *State v. Middleton,* 294 Or. 427, 657 P.2d 1215, 1219–21 (1983). The court then stated: "We expressly hold that in Oregon a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth." *Id.* 657 P.2d at 1221. Likewise, the Washington court allowed an expert to give statistics that supported her opinion that a child's delay in reporting sexual abuse was not unusual, but held that it was error for the court to allow statistics showing that in 85 to 90 percent of cases children are molested "by someone they already know." *State v. Petrich,* 101 Wash.2d 566, 683 P.2d 173, 180 (1984). In *Petrich* the defendant was the grandfather of the child and the court believed, as to the latter statistics, that the potential for prejudice was significant compared to its minimal probative value. *Id.* The South Dakota court held that it was reversible error to allow an expert to testify that the child had obtained knowledge about sexual matters through experience with the defendant. *State v. Logue,* 372 N.W.2d 151, 156–57 (S.D.1985). The *Logue* court reasoned that although the information may be helpful to the jury to understand the evidence its probative value was substantially outweighed by the prejudicial effect of misleading the jury, and the trial court clearly abused its broad discretion by admitting such testimony. *Id.* at 157. In summary, it seems that experts will be allowed to express opinions on matters that explain relevant mental and psychological symptoms present in sexually abused children. Unlike the holding in *Kim,* though, most courts reject expert testimony that either directly or indirectly renders an opinion on the credibility or truthfulness of a witness.

■ Expert opinion testimony is admissible pursuant to Iowa Rule of Evidence 702 if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." The ultimate determination of the credibility or truthfulness of a witness is not "a fact in issue," but a matter to be generally determined solely by the jury. An exception to this would be where the defendant is charged with perjury. Consequently, we conclude that expert opinions as to the truthfulness of a witness is not admissible pursuant to rule 702. As we indicated, the effect of the expert opinions in this case was the same as directly opining on the truthfulness of the complaining witness.

Further reasons support this conclusion. We do not believe that an expert's testimony that young children do not lie about sexual matters is particularly helpful to the jury. It is within the common knowledge of a juror that these children would have to have some type of sexual experience, instruction or exposure in order to acquire the necessary knowledge to make such accusations and testify accordingly. Indeed, one court noted that: "A young child is unlikely to fabricate a graphic account of sexual activity because such activity is beyond the realm of his or her experience." *State v. McCafferty,* 356 N.W.2d 159, 164 (S.D.1984).

We understand and recognize the State's concern about the sexual abuse of children. These cases are difficult to prosecute because of the age of the victims and the lack of eyewitnesses. Such crimes are indeed detestable and society demands prosecution of these abusers. However, a sexual abuse charge alone carries a large stigma on the accused and conviction provides a serious penalty. In interpreting our Rules of Evidence, we must not only be aware of the needs of society but also the defendant's right to a fair trial.

■ A witness is not permitted to express an opinion as to the ultimate fact of the accused's guilt or innocence. *Oppedal,* 232 N.W.2d at 524. In this case the trial court admitted expert testimony relating to the truthfulness of the complaining witness. We believe the effect of the opinion

testimony was to improperly suggest the complainant was telling the truth and, consequently, the defendant was guilty. We conclude the opinion testimony crossed that "fine but essential" line between an "opinion which would be truly helpful to the jury and that which merely conveys a conclusion concerning defendant's legal guilt." *Horton*, 231 N.W.2d at 38. In this instance admission of the expert opinion constitutes error. *See Nimmo*, 247 N.W.2d at 230; *Swartz*, 244 N.W.2d at 555; *Ogg*, 243 N.W.2d at 621; *Oppedal*, 232 N.W.2d at 524. As noted earlier, adequate objection was made for us to reverse on these grounds.

We hold that the trial court erred in overruling the objection to the testimony of the expert witnesses Davis and Mosher. The court clearly abused its discretion and committed reversible error by admitting opinion testimony prejudicial to defendant. Accordingly, the case is reversed and remanded for a new trial.

REVERSED AND REMANDED.

All Justices concur except HARRIS, WOLLE, and LARSON, JJ., who dissent, and LAVORATO, J., who takes no part.

HARRIS, Justice (dissenting).

I have three principal disagreements with the majority opinion and am convinced any one of them justifies an affirmance. I dissent because the majority in fact applies the wrong standard of review, because the majority holding is at odds with our forward looking liberal admissibility standard of former years, and because the case is a dramatically inappropriate catalyst for such a change.

I. My strongest disagreement is on our proper scope of review. Admission of expert testimony is discretionary; we "reverse on a clear showing of abuse...." *State v. Halstead*, 362 N.W.2d 504, 506 (Iowa 1985). The majority pays lip service

but does not actually apply this standard. We should find an abuse only if the "discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Morrison*, 323 N.W.2d 254, 256 (Iowa 1982) (quoting *State v. Buck*, 275 N.W.2d 194, 195 (1979)).

The majority's analysis however accords the trial court no discretion on the admission of the challenged expert testimony. Its private preferences are at odds with those of the judge whose ruling we review and because of that we strike down as error what should be discretionary.

II. We were once in the forefront when American courts emerged from the rigid refusal on the part of most courts during the last century to trust juries with expert evidence. We claim to still take a liberal view on the admissibility of expert testimony, in contrast with the hostility of nineteenth century courts, ours included,[1] to expert testimony. That hostility was grounded on a widely held judicial fear that expert testimony would somehow commandeer an essential responsibility of the jury. McCormick explains:

> [U]ntil about thirty-five years ago [in 1972], a very substantial number of courts had gone far beyond [the] common-sense reluctance to listen to the witness's views as to how the judge and jury should exercise their functions and had announced the general doctrine that witnesses would not be permitted to give their opinions or conclusions upon an ultimate fact in issue.

The reason was sometimes given that such testimony "usurps the function" or "invades the province" of the jury. Obviously these expressions were not intended to be taken literally, but merely to suggest the danger that the jury might forego independent analysis of the facts and bow too readily to the opinion

---

1. A statute, Iowa Code section 3655 (1873), mandated the admission of experts' testimony to compare handwriting with genuine specimens. Our court yielded to the statutory mandate without enthusiasm and with some lack of grace and then commented that "the evidence of experts is of the lowest order and of the most unsatisfactory character." *Whitaker v. Parker*, 42 Iowa 585, 587 (1876).

of an expert or otherwise influential witness.

Although the rule had been followed in many states prior to 1942, there has been a trend since then to abandon or reject it with the result that now in a majority of state courts an expert may state his opinion upon an ultimate fact, provided that all other requirements for admission of expert opinion are met. The trend culminated in the adoption of Federal Rule of Evidence 704:

Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

C. McCormick, *McCormick on Evidence* § 12, at 30–31 (3d ed. E. Cleary 1984). A footnote to the foregoing text credits an opinion of this court with showing the way. Referring to the trend rejecting the rule excluding such expert opinion the footnote reads:

7. The trend appears to have begun with the leading case of *Grismore v. Consolidated Products*, 232 Iowa 328, 5 N.W.2d 646 (1942).

*See State v. Sheridan*, 247 N.W.2d 232, 235–36 (1976) ("Beginning with ... *Grismore* ... we have repeatedly held a general objection to opinion testimony that the question invades the province of the jury is invalid and not available.").

Until now our cases have not repudiated the liberal spirit of *Grismore*. In *Halstead* we rejected a majority rule excluding testimony relating to a non-organic mental disorder. We acknowledged the exclusion of this special line of testimony was a majority view. We nevertheless said:

In our opinion the better rule, however, is that the decision on admissibility should be left to the discretion of the trial court under the circumstances of the particular case, guided by the question of whether the expert opinion will be helpful to the jury in performing its function.

362 N.W.2d at 506. In *State v. Galloway*, 275 N.W.2d 736 (Iowa 1979),[2] the majority's concurring opinion did not go nearly so far as this majority goes. The *Galloway* majority merely held the "trial court on retrial would be justified in sustaining an objection that [the expert's] opinion is not the proper subject of expert testimony." *Id.* at 741. This is a far cry from holding that it would be an abuse of discretion to admit the testimony.

I also strongly disagree with the majority's conclusion that the subject matter of this testimony would not be helpful to the jury. Misinformation abounds on the subject. Where the question is a matter of common law (unlike Iowa where it is statutory), courts differ on the question of whether corroboration is required to convict in a sex crime. *See* Annot., 31 A.L.R. 4th 120, 125 (1984) ("In a number of cases involving prosecutions for miscellaneous sexual offenses involving child victims ... the courts have held that corroboration of the victim's testimony is not required.... The contrary view is taken by District of Columbia courts which have held that corroboration of the victim's testimony is required in such cases due to the immaturity of the victim...."). If the courts in the District of Columbia are confused on the subject it was certainly within this trial court's discretion to worry about whether the jury might also be confused.

The majority places great reliance on cases which hold that expert opinion concerning guilt or innocence of an accused is inadmissible. I have no dispute with those holdings. But I strongly disagree with the majority's characterization of the challenged testimony: "telling the jury that the complainant would not lie about matters concerning sexual abuse." The challenged testimony did not relate to anything personal to the child who was the victim in this

---

2. I did not join in the majority's concurring opinion in *Galloway*. I persist in the views expressed in my *Galloway* opinion. I am not alone. *See U.S. v. Downing*, 753 F.2d 1224, 1231 (3d Cir.1985). For purposes of this opinion I can however yield to the views of the *Galloway* majority.

**100**

case. The testimony was offered only to cast light upon a subject that until recent years was in some doubt: whether a class of sex crime victims tend to fantasize what has happened to them.

The testimony was useful to put distance from any notion, lingering from former years, that a sex victim was somehow suspect, that sex crimes (in accordance with a discredited instruction) are easy to charge but hard to prove. The testimony did not relate to the victim's own veracity.

III. One can scarcely imagine a more unfortunate case in which to stage retreat from a liberal admissibility standard. The subject of this expert testimony is one upon which we could come close to taking judicial notice. It is a conclusion widely held and highly respected among the experts on the subject. Both experts whose testimony is challenged testified that their conclusion squared with their own experience in dealing with children. One of the two witnesses also related that the conclusion was included as a subject of instruction at special training sessions she attended. Learned treatises also attest the validity of the testimony. *See, e.g.,* Jones, *Reliable and Fictitious Accounts of Sexual Abuse in Children,* 6 J. Interpersonal Violence ——, —— (1986) (study found only 1.56% of reports of sexual abuse made by children were fictitious).

Just as the subject of the testimony is inappropriate, so likewise is the subject case inappropriate for a retreat. Evidence of defendant's guilt was clear. He does not deserve a new trial. I would affirm.

LARSON, J., joins this dissent.

WOLLE, Justice (dissenting).

I would affirm the defendant's conviction. The sole evidentiary question preserved for this appeal was whether the trial court was required by Iowa Rule of Evidence 702 to exclude the testimony of two persons whom the defendant concedes were qualified to testify as experts. In my view, the testimony of those two witnesses did not amount to the expression of an opinion on the ultimate fact of defendant's guilt or innocence. They did not express an opinion on an essential element of the crime charged. Neither did they express an opinion on the credibility of the female victim herself.

I would leave to the discretion of the trial court the determination whether their testimony would be helpful to the jury in performing its function, the critical rule 702 test. *State v. Halstead,* 362 N.W.2d 504, 506 (Iowa 1985). I find no abuse of that discretion in the trial court's overruling of defendant's rule 702 objection.