# IN THE COURT OF APPEALS OF IOWA

No. 13-1935
Filed February 11, 2015

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**BRUCE ROLFE SPAHR,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Mahaska County, Joel D. Yates, Judge.

A defendant appeals from his conviction, judgment, and sentence for sexual abuse in the second degree. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Mary A. Triick, Assistant Attorney General, Laura Roan, County Attorney, and John McCormally, Assistant County Attorney, for appellee.

Considered by Vaitheswaran, P.J., Potterfield, J., and Goodhue, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**GOODHUE, S.J.**

Bruce Rolfe Spahr appeals from his conviction, judgment, and sentence for sexual abuse in the second degree. On January 25, 2012, Spahr was charged with two counts of sexual abuse in the second degree as committed against A.L. between 2003 and 2006, and two counts of sexual abuse in the second degree committed against R.L. between 2003 and 2010. A.L. and R.L. were both under twelve years of age at the time of the alleged sexual abuse. Spahr was tried to a jury, and on August 30, 2013, the jury returned a verdict of not guilty on three counts but returned a verdict of guilty on count I, which involved only A.L. Spahr was sentenced accordingly, and the court entered a five-year no-contact order as to A.L.

## I. Background Facts and Procedures.

Spahr began a relationship with R.L. and A.L.'s mother, Christine, and eventually they married. The four began living together in August 2003 when A.L. was nine years old. Shortly thereafter, A.L. and R.L. were occupying an upstairs bedroom, and Spahr and Christine were occupying a downstairs bedroom. A.L. testified that while he was drunk, Spahr entered the girls' upstairs bedroom, removed her blanket and clothing, and put his hand on her "boob," touched her legs, and put his mouth on her genital area. A.L. further testified that she tried to kick Spahr away but he pushed her down and held her ankles. R.L. was in the same bedroom in a separate bed, but she did not wake up. A.L. testified that after the incident, Spahr went downstairs to the bedroom he shared with Christine.

A.L. began crying and went downstairs to the kitchen. Christine came out to the kitchen and asked why A.L. was crying. A.L. told her mother that Spahr had touched her "boob." Christine asked if she was sure and that she would give A.L. three days to tell Christine whether her report was true. A.L. testified that afterwards Spahr told her that if she told what happened she would be taken away from her mother and sister. She further testified that she became fearful and did not want to lose her mother. A few days later A.L. told her mother that what she had said about the sexual abuse had only been a nightmare.

A.L. testified that the sexual abuse by Spahr continued when he was intoxicated and her mother was not home. She further testified that it happened as often as one night a week for two years, and then became less frequent and ended at the beginning of her tenth year of school.

When a senior in high school, A.L. was taking a high school course that involved a lab co-taught by a teacher and Don DeKock, a Mahaska County Deputy Sheriff. Deputy DeKock is experienced and trained in the area of child sexual abuse investigation and is assigned to those duties in his capacity as a deputy sheriff. He is also a member of the Mahaska County child protection team. On December 8, 2011, A.L. stayed after school and reported to DeKock and her teacher that she had been sexually abused by Spahr. Deputy DeKock testified that he was not caught entirely off guard by A.L.'s revelation. He testified that

> you know you can sometimes—with victims of whatever—you can see something is not right here. Something is going on with this student. It could be how they react, maybe their response, etc., and at the time that doesn't mean that they are a victim of sexual

abuse, it may be something else, it could be suicidal.  Those types of things.

Deputy DeKock reported A.L.'s allegations to the Iowa Department of Human Services (DHS) and a physical examination of both children was arranged.  Both girls were physically examined and no physical evidence of abuse was presented at trial.  Both girls were interviewed by a representative of the DHS, and a videotaped copy of the interview was submitted at trial by Spahr.  Deputy DeKock observed the interview through a one-way mirror.  Christine was interviewed, and it was apparent that she did not believe the allegations of her daughters.  The depositions of A.L. and R.L. were taken and their statements in the interview, deposition, and at trial were often inconsistent.

Deputy DeKock questioned the support Christine was providing to the girls and felt a concern for their safety.  He testified that the girls were immediately removed from the residence and were placed in foster care.

Spahr testified on his own behalf and denied any sexual touching of the girls.  He stated that he had a difficult relationship with them.  There was evidence that A.L. did not like Spahr independently of the sexual abuse claim.

Christine testified that prior to her response to A.L.'s crying in the kitchen on the night of the alleged first incident, she had been in her bedroom and she knew that A.L.'s report was false because Spahr had been in the bedroom with her during the time A.L. claimed the incident took place.  She further testified that the girls never made any other allegation of sexual abuse by Spahr to her.

Christine testified her former husband—the father of the girls—had told her that he liked little girls.  In A.L.'s interview by the DHS, she stated she had

told her mom that Spahr had "touched her how her real dad touched her." In fact, Christine had removed the girls from the home she was occupying with their natural father when she had become concerned that he had sexually abused A.L. and R.L., and thereafter, she filed for dissolution of their marriage. The State filed a motion in limine excluding any reference to sexual abuse of the girls that pre-dated the alleged abuse by Spahr. Defense counsel made an offer of proof that limited the alleged prior abuse to statements the natural father had made and the appropriate actions Christine had taken. Counsel's intent was to establish that if Christine had really felt Spahr was sexually abusing the girls, she would have removed the children from Spahr's presence.

The trial court deferred the ruling on the motion in limine before trial and stated that the proffered testimony would be reassessed in light of the evidence presented by the State. The issue was brought up after the close of the State's evidence and Spahr's counsel contended that the State had opened the door by painting Christine as a bad mother. The trial court ruled that the testimony contained in the offer of proof was not admissible.

Spahr has appealed, claiming the district court erred by not admitting the proffered testimony and he was denied effective assistance of counsel when counsel did not object to Deputy DeKock's testifying in a manner that commented on the credibility of the testimony of Christine and both girls.

## II. Standard of Review.

Evidentiary rulings issued by a trial court are reviewed for abuse of discretion. *State v. Thompson*, 836 N.W.2d 470, 476 (Iowa 2013). Ineffective-assistance-of-counsel claims are reviewed de novo. *State v. Rodriguez*, 804

N.W.2d 844, 848 (Iowa 2011). Ordinarily, claims of ineffective assistance of counsel are reserved for postconviction relief but can be considered on direct appeal when the available record is adequate. *Id.*

### III. Error Preservation.

As to the evidentiary issue, the State does not contest error preservation. The issue was raised before the trial court, and it was ruled on. *See LaMasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012). The issue of ineffective assistance of counsel is an exception to the normal rule of error preservation. *Rodriguez*, 804 N.W.2d at 848.

### IV. Discussion.

A. Offer of Proof.

Evidence of a person's character or a trait of a person's character is not admissible for the purpose of proving the person acted in conformity therewith on a particular occasion. Iowa R. Evid. 5.404(a). An exception exists within the discretion of the court if the evidence is probative of truthfulness or untruthfulness. Iowa R. Evid 5.608(b). Spahr's effort was not directed to truthfulness or the lack thereof but to specific conduct on a prior occasion. Additionally, application of the exception appears to be limited to cross-examination. *Id.*

An appellate court will disturb a trial court's ruling on evidence only if it amounts to an abuse of discretion. *State v. Martin*, 385 N.W.2d 549, 552 (Iowa 1986). An abuse of discretion exists only when the trial court's ruling is on grounds clearly untenable or to an extent clearly unreasonable. *Id.* The trial

court's ruling cannot be said to be clearly untenable or unreasonable given the contents of the offer of proof and the applicable rules of evidence.

B. Ineffective Assistance of Counsel.

Spahr's counsel did not object to State witness Deputy DeKock's statement that he was not completely caught off guard by A.L.'s statement that Spahr had sexually abused her and intimating that he could see something was not right with A.L. Further, counsel did not object when DeKock testified that after interviewing Christine and observing the interview of the children, he was concerned with their safety and the children were immediately removed from the home and placed in foster care.

In child abuse cases, experts are allowed to express an opinion on matters that explain mental and psychological symptoms present in children that have been sexually abused. *See State v. Meyers*, 382 N.W.2d 91, 97 (Iowa 1986). However, they are not permitted to directly or indirectly render an opinion on the credibility of a witness. *Id.*

In a recent case where an expert witness testified that she had recommended therapy for the victim and recommended she stay away from the alleged perpetrator, our supreme court held that the testimony crossed the line and was indirectly vouching for her credibility. *State v. Dudley*, 856 N.W.2d 668, 678 (Iowa 2014). Deputy DeKock's testimony as set out above—that he considered Christine's reaction not to be supportive of the girls and that out of concern for the children they were immediately removed from the home and placed in foster care—is substantially similar to the testimony that was ruled inadmissible in *Dudley*. *See id.* DeKock's testimony and action taken clearly

imply he did not believe Christine and did believe the girls. Trial counsel did not object to DeKock's testimony but whether trial counsel had a reason for not doing so cannot be determined.

The record is inadequate to address Spahr's claim of ineffective assistance of counsel. Only in rare cases is the record adequate to resolve issues of ineffective assistance of counsel on direct appeal. *State v. Tate*, 710 N.W.2d 237, 240 (Iowa 2006). Spahr's trial counsel should be allowed to respond to the claim of ineffective assistance of counsel. *See State v. Brubaker*, 805 N.W.2d 164, 170 (Iowa 2013) (noting "[a] primary reason for [considering ineffective assistance claims in postconviction proceedings] is to ensure development of an adequate record to allow the attorney charged to respond to the defendant's claims").

The trial court is affirmed, but the claim of ineffective assistance of counsel is preserved for postconviction relief.

**AFFIRMED.**