**IN THE COURT OF APPEALS OF IOWA**

No. 16-1483
Filed May 17, 2017

IN THE MATTER OF THE SIEVERS FAMILY REVOCABLE TRUST DATED JULY 17, 2002,

**LINDA BARGER**
        Beneficiary-Appellant,

_____

        Appeal from the Iowa District Court for Jones County, Kevin McKeever,

Judge.

        Linda Barger appeals the district court's ruling declining to invoke

jurisdiction and intervene in her parents' trust's internal matters pursuant to Iowa

Code section 633A.6202 (2013).  **AFFIRMED.**

        Larry J. Thorson of Ackley, Kopecky & Kingery, L.L.P., Cedar Rapids, for

appellant.

        Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**DOYLE, Judge.**

Linda Barger is the youngest of four girls born to John and Lucille Sievers. Her sisters are JoAnne Ricklefs, Constance Sue Carson, and Francis K. Aldershof. In 2002, the Sievers set up a revocable trust, placing all of their wealth, possessions, and investments in the trust. Linda and her sisters were the beneficiaries of the trust, and all four sisters were initially named successor co-trustees. However, Linda was removed as a successor co-trustee after she and her father had a falling out in 2006.

John and Lucille experienced some health issues and moved to a residential-care center in late 2007. JoAnne, who had been granted power of attorney by and for her parents in 2003, began assisting her parents with their finances, writing checks for expenses at her father's direction. John passed away in 2010, and Lucille in 2014.

Before Lucille died, Linda filed a "petition concerning internal affairs of trust" in district court requesting the court take jurisdiction of the trust and conduct proceedings related to the trust's affairs pursuant to Iowa Code section 633A.6202 (2013). She asserted her sisters had "acted as powers of attorney for [Lucille]," necessitating court intervention to "[d]etermine the existence of any immunity, power, privilege, duty, or right of the successor trustee(s) to make distributions to themselves or others during the lifetime of the surviving grantor," among other things. After Lucille's death, Linda filed her claim in trust, modifying the language slightly from her original petition, but basically asserting the same allegations and reasons for intervention.

The matter proceeded to trial in 2016. Thereafter, the court entered its ruling determining it would not intervene in the trust's internal affairs because it found "nothing to indicate that any duty owed to the beneficiaries of the Sievers family trust was breached." The court explained:

> The exhibits and witness testimony do not convince the court that there has been a breach of the trust. [Linda] certainly has her suspicions regarding the activities of her sisters, especially during the years between 2007 and 2014. However, these suspicions do not amount to a showing that there has been any misappropriation of trust funds or any hiding or dissipation of trust funds. The strongest evidence that was presented regarding the possible hiding of trust funds was a conversation that took place months ago regarding an $80,000 account outside of Edward Jones. The only person who testified to this was [Linda]. No witness, document or exhibit corroborated the existence of such an account.
> . . . .
> There was a great deal of testimony presented regarding Lucille's mental state during the last years of her life. [Linda] alleges that during the last few years of [Lucille's] life, [Lucille] was not in control of the . . . trust but two of [Linda's sisters] were actually in control of the . . . trust account. The court is not convinced of this fact. However, even if this fact is true, there has been no evidence that this led to a breach of any duty owed to the beneficiaries of the trust.
> [Linda] asserts that some of the money distributed from the trust and some of the transactions engaged in by the trust in 2006 and 2007 were questionable. Particularly, the purchase of a condo and payments to [her sister JoAnne]. The court has reviewed the testimony regarding these transactions and payments and has reviewed the exhibits presented and finds nothing overtly suspicious about them.

Linda now appeals the district court's ruling. She contends the district court should have intervened in the trust's internal matters. She argues her sisters acted as trustees before Lucille's death to the sisters' gain and Linda's detriment. She claims she was denied information concerning the trust and her parents' other financial accounts by her sisters, who had control and access of the accounts. She insists her sister told her there was an account with a balance

of $80,000, and she believes her father owned several certificates of deposit (CDs) that must "still exist someplace," but because her sisters will not give her any further information, a special trustee or forensic accountant needs to be appointed to investigate.[1]

Upon our de novo review, *see In re Trust No. T-1 of Trimble*, 826 N.W.2d 474, 482 (Iowa 2013), we agree with the district court's findings and conclusions. Ultimately, the matter boils down to credibility, and implicit in the court's ruling is that the court, as the trier of fact, found Linda to be less credible. *See Feuk v. Feuk*, No. 12-1699, 2013 WL 1749802, at *1 (Iowa Ct. App. Apr. 24, 2013); *see also Schutjer v. Algona Manor Care Ctr.*, 780 N.W.2d 549, 560-61 (Iowa 2010) (applying standard to "work backward" and ascertain implicit credibility findings in workers' compensation commissioner's decision). Though we are not bound by the court's factual findings, *Trimble*, 826 N.W.2d at 482, determinations of credibility are in most instances left for the trier of fact, who is in a better position to evaluate it. *See State v. Myers*, 382 N.W.2d 91, 97 (Iowa 1986).

Here, the only evidence presented at trial to support the existence of an $80,000 account is Linda's own testimony. Linda claimed JoAnne said twice, while all four sisters were gathered at the trust's financial advisor's office after her mother's death, "there was an $80,000 account and [Constance and Frances], they all shook their head[s] yes." JoAnne denied making this statement and testified there was no such account. Frances testified that no statement was made that an account with $80,000 existed, and she testified she did not believe

---

[1] Linda's sister Constance, one of the co-trustees, died before the notice of appeal was filed. The supreme court permitted the attorney for the other co-trustees, JoAnne and Frances, to withdraw. No appellate brief was filed on behalf of the trust or the trustees.

there was such an account. The financial advisor present during the meeting testified he never heard JoAnne say there was an account with $80,000. The district court clearly found Linda less credible than the others as her suspicions were not corroborated by any witness, document, or exhibit.

Moreover, Linda's testimony concerning CDs she "knew" that her father had was confusing, and at times, conflicting. She testified her father had several CDs during his lifetime, and though he had plenty of time to cash them in, "he wasn't mentally capable from probably 2007 on." She admitted her parents intended to place everything in their trust, and she was given a release in 2014 to get whatever information she wanted about the trust's finances. She testified vaguely that "there were some at Edward Jones that [she had] copies of" that were "dated way out." But when she was directed to the exhibit showing a recompilation of the distribution of the trust's funds—none of which were described as CDs—she testified the CDs "could be at a bank. They could have been anywhere. They could have been in a safety deposit box, I don't know." The following exchange then occurred:

> Q. Well, maybe you can correct me, but I understood your testimony is that amongst the Edward Jones account that was divided, there were CDs? A. There were CDs.
> Q. Are there any that were given to your sister [Constance]? A. I think that they all received them because, as you see, everyone received the same amount that day.
> Q. But did your sister [Constance] receive any CDs? A. No.
> Q. Okay. A. So they still exist someplace.
> Q. But you have no documentation that exists, you just believe? A. I saw it in the paperwork that I have been researching.
> Q. Where is that paperwork? A. Well, I'm trying to think, was it in the Edward Jones that we were looking at yesterday. I don't remember at this time. We can find them for you.
> . . . .

Q. All right. But you're telling us there are CDs? A. Yes, I saw them. I don't know—I mean, I don't know why they would have cashed them, but they were—that dad dated way out. And I think it's in an Edward Jones statement that I have.

Q. All right. And you have documentation of these CDs that haven't materialized? A. I believe so, that's in Edward Jones or someplace where I read them.

Q. Do you have that documentation to present? A. Not with me. It is probably—I brought some files, some things. It could be in there, but I'm not sure. But they are in the Edward Jones account. I just really assumed that's where they ended up. There is no—for the research I have, no proof that they've been cashed.

Q. And since at least June of 2014, you have had unbridled ability to get access to your parents' financial affairs? A. Like I said, I have the documentation.

Q. Where is it? A. Well, you sent me copies. It's in our paperwork for Edward Jones.

Despite this testimony, no documentation was ever produced to corroborate Linda's testimony, calling into question Linda's credibility as to the existence of such accounts or what she believed the financial documents represented. We can speculate that if her father did own CDs, it is likely that he cashed them in after he became estranged from Linda. But in any event, there is no evidence that her sisters are hiding anything from her or have breached any duty. This record does not show any basis to deviate from the district court's findings and ultimate conclusion that there was no evidence to cause the court to intervene in the internal affairs of the Sievers family trust. Accordingly, we affirm the district court's ruling.

**AFFIRMED.**