# IN THE COURT OF APPEALS OF IOWA

No. 20-0560
Filed October 6, 2021

**BRIAN KELLY ALLISON,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Keokuk County, Shawn R. Showers,

Judge.

        The applicant appeals the denial of his second application for postconviction

relief. **AFFIRMED.**

        R.E. Breckenridge of Breckenridge Law P,C., Ottumwa, for appellant.

        Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant

Attorney General, for appellee State.

        Considered by Vaitheswaran, P.J., May, J., and Potterfield, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2021).

**POTTERFIELD, Senior Judge.**

Brian Allison appeals from the denial of his second application for postconviction relief (PCR). He argues (1) the district court wrongly concluded his first PCR appellate counsel did not provide ineffective assistance in declining to raise an issue on appeal and (2) the district court should have found a change in law about expert testimony and bolstering credibility rendered certain trial testimony inadmissible and warrants a new trial.

## I. Background Facts and Proceedings.

In 2010, Allison was charged by trial information with three counts of sexual abuse in the third degree. The abuse was alleged to involve Allison's step-daughter, C.N., and to have occurred between 2003 and December 2007.

Allison's criminal trial took place in 2011. With the delay in reporting, there was no physical evidence to support C.N.'s allegations, but she testified as to four specific instances of abuse she remembered. Allison testified in his own defense and denied C.N.'s allegations. He claimed C.N. fabricated the abuse at her mother's behest as part of a custody dispute involving Allison's and the mother's biological child. The jury convicted Allison of all three counts. He appealed, and a panel of this court affirmed the judgment and sentences. *See State v. Allison*, No. 11-0774, 2012 WL 2819324, at *6 (Iowa Ct. App. July 11, 2012). Procedendo issued on September 6, 2012.

Allison filed his first application for PCR in 2013. The district court denied his application, and this court affirmed. *See Allison v. State*, No. 14-0925, 2015 WL 5278968, at *2 (Iowa Ct. App. Sept. 10, 2015).

Allison filed his second application for PCR on November 5, 2015—outside the three-year window for timely applications. In his second application, Allison claimed he received ineffective assistance from PCR counsel. The district court concluded Allison's allegation his first PCR counsel was ineffective did not supply a "ground of fact" to avoid the three-year time bar, and the court dismissed Allison's second application as untimely. A panel of this court affirmed. *Allison v. State*, No. 16-0764, 2017 WL 706330, at *2 (Iowa Ct. App. Feb. 22, 2017). On further review, the Iowa Supreme Court abrogated prior case law and held

> that where a PCR petition alleging ineffective assistance of trial counsel has been timely filed per [Iowa Code] section 822.3 [(2015)] and there is a successive PCR petition alleging postconviction counsel was ineffective in presenting the ineffective-assistance-of-trial-counsel claim, the timing of the filing of the second PCR petition relates back to the timing of the filing of the original PCR petition for purposes of Iowa Code section 822.3 if the successive PCR petition is filed promptly after the conclusion of the first PCR action.

*Allison v. State*, 914 N.W.2d 866, 891 (Iowa 2018). Based on the application of the newly announced relation-back doctrine, the court concluded Allison's second petition was not time-barred, and the court remanded the case for further proceedings on the merits of Allison's claims. *Id.* at 891, 893.

In February 2020, the district court held a hearing on the merits of Allison's second PCR application. The court issued a written ruling denying Allison's second application on the merits. Allison appeals.

**II. Standard of Review.**

"We normally review postconviction proceedings for errors at law." *Castro v. State*, 795 N.W.2d 789, 792 (Iowa 2011). But "[a]pplications for [PCR] that

allege ineffective assistance of counsel . . . raise a constitutional claim," so we review those de novo. *Id.*

**III. Discussion.**

**A. Whether first PCR appellate counsel provided ineffective assistance.**

Bart Little testified on behalf of the State at Allison's underlying criminal trial, stating he was working on a racecar at Allison's house one afternoon when he ran out of welding wire. He went into the house and yelled for Allison, who responded by shouting back; Little followed the noise. Little opened the door to what he realized was a bedroom and saw Allison and C.N. "laying in the bed" with a blanket over them. Allison got up, and he was wearing only boxers. C.N. was wearing a "low cut" top and "really short shorts." Allison told Little he was helping C.N. with her algebra homework; nothing else was said about the incident, and Little went back to welding after Allison located more welding wire. At trial, Allison was asked about the day Little spoke of and testified he had no memory of it. Additionally, none of the four specific instances of sexual abuse C.N. testified to involved Little walking into the bedroom.

In his first application for PCR, Allison alleged his trial counsel provided ineffective assistance[1] by not raising the issue that Little allegedly had an illegal sexual relationship with Allison's fourteen-year-old biological daughter—not C.N.

---

[1] When raising a claim of ineffective assistance, an applicant "must prove by a preponderance of the evidence: (1) . . . counsel failed to perform an essential duty, and (2) prejudice resulted." *See State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011).

Allison claimed this alleged sexual abuse on the part of Little gave Little a motive to lie about Allison[2] so telling the jury about it would discredit Little's testimony.

Allison's trial counsel was called to testify at the PCR hearing. When asked why he did not cross-examine Little about the allegation he perpetrated sexual abuse, trial counsel responded:

> [F]irst of all, [C.N.] didn't recall the incident [of Little walking into the room] I don't believe but certainly never said anything which would have been any type of sexual activity would have occurred during this incident. And as a matter of being persuasive, you don't try to find battles if you don't need them. As I recall Mr. Little said that it was known beforehand he was going to be coming over, that when he got there, he didn't find anything which he thought something bad was going on. He certainly didn't alert anybody that he thought something inappropriate was going on, and he basically just once he found them went and did the work that he was going to do. And it was a situation where nobody was saying anything inappropriate had actually happened.
>
> So the question becomes if you're saying that a victim in the case is not credible or unbelievable or just flat out lying, do you try to say and here's somebody else who's not—who is not telling the truth or lying and he has an entirely separate reason for doing it, or do you just basically say it doesn't make any difference because nobody is saying anything inappropriate happened. And so my strategic decision in not trying to directly impeach him was basically that it doesn't make any difference, because nobody's saying that it has anything to do with the actual allegations.

At the PCR hearing, trial counsel also testified that he remembered neither C.N. nor Allison had any memory of the day about which Little testified and so he used that to Allison's advantage during closing argument. In fact, at the underlying criminal trial, trial counsel argued during closing:

> The State thinks it's a big thing that he was in bed with his daughter. When he was asked about it, could it have happened? Sure. She would be in bed with me. Sure. Well, do you remember

---

[2] At his first PCR hearing, Allison testified, "I mean, I know he lied about it, but I believe that the reason why he did that was to get me put away so that I wouldn't pressure my daughter into reporting it."

when he came in? No. Do you know why? Because it's meaningless because there's no reason to remember it because it meant nothing. Also remember that's something that was not mentioned by [C.N.] as being anything which had to do with any kind of sexual content. She didn't say, oh, and he was about to have sex with me or had sex with me, and then Mr. Little walked in. He didn't remember it because it's meaningless.

The PCR court concluded Allison's trial counsel did not breach an essential duty in not trying to discredit Little because trial counsel's "tactical decision about his cross-examination of Mr. Little was reasonable, and does not fall below the standard of a reasonably competent attorney."

On appeal from his first PCR application, Allison's counsel did not challenge the PCR court's ruling on the issue. In his second PCR application, Allison challenged that decision, asserting his first PCR appellate counsel provided ineffective assistance in failing to challenge the PCR court's ruling as to whether his trial counsel provided ineffective assistance regarding Little's testimony.

The second PCR court also ruled against Allison, finding he could not establish he was prejudiced by first PCR appellate counsel's decision not to challenge the PCR court's ruling on appeal. Here on appeal, Allison challenges that ruling.

Technically, the claim before us is that first PCR appellate counsel had a duty to challenge the PCR court's conclusion that trial counsel was not ineffective. Implicit in the claim is that appellate PCR counsel would have been successful if counsel had raised the issue on appeal. *See Brubaker*, 805 N.W.2d at 171 ("We will not find counsel incompetent for failing to pursue a meritless issue."). So this ultimately boils down to another attempt by Allison to convince us his trial counsel breached an essential duty in failing to discredit Little with allegations of sexual

abuse and that this failure prejudiced Allison at his criminal trial. Like the first and second PCR courts, we conclude Allison cannot meet his burden.

We acknowledge and agree with Allison's contention that trial counsel's claim he made a strategic decision not to raise the issue of Little's alleged sexual abuse does not prevent us from finding counsel breached an essential duty. *See State v. Ondayog*, 722 N.W.2d 778, 786 (Iowa 2006) ("The fact that a particular decision was made for tactical reasons does not, however, automatically immunize the decision from a Sixth Amendment challenge. That decision must still satisfy the ultimate test: 'whether under the entire record and totality of the circumstances" counsel performed competently.'"). We must determine whether counsel's decision not to discredit Little was "justifiable" and "reasonable." *See Anfinson v. State*, 758 N.W.2d 496, 501 (Iowa 2008) ("The real issue is not whether defense counsel's actions were successful, but whether they were 'justifiable.'" (citation omitted)); *Ondayog*, 722 N.W.2d at 786 ("In other words, 'we will not reverse where counsel has made a reasonable decision concerning trial tactics and strategy, even if such judgments ultimately fail.'" (citation omitted)). And we find counsel's decision justifiable and reasonable. As the second PCR court noted, "Bart Little's testimony did not convict Brian Allison." Little did not testify as to any sexual abuse. And his testimony was called into question when neither C.N. nor Allison remembered the event about which he testified—a fact trial counsel pointed out in closing arguments. Because Little's testimony did not implicate Allison in any crime, it was a reasonable choice to focus on painting C.N. alone as unreliable or dishonest—rather than taking a "shotgun" approach and challenging the credibility of multiple witnesses and possibly confusing the issues in front of the jury. Trial

counsel did not breach an essential duty in making the justifiable decision not to discredit Little. So Allison's first PCR appellate counsel did not have a duty to challenge the PCR court's ruling on appeal.

## B. Law Regarding Expert Testimony.

Allison maintains the district court should have found a claimed change in law about expert testimony and bolstering credibility rendered certain trial testimony inadmissible and warrants a new trial. Allison focuses on *State v. Dudley*, 856 N.W.2d 668 (Iowa 2014), and its progeny.

This claim fails because *Dudley* does not create a new ground of law. As explained in *Dudley*, the supreme court held in 1986 that an expert could express opinions "on matters that explain relevant mental and psychological symptoms presented in sexually abused children," while also acknowledging that "most courts reject expert testimony that either directly or indirectly renders an opinion on the credibility of truthfulness of a witness." 856 N.W.2d at 676 (quoting *State v. Myers*, 382 N.W.2d 91, 97 (Iowa 1986)). *Myers* was "consistently followed . . . in our subsequent case law." *Id.* And the *Dudley* court found "no reason to overturn this well-settled Iowa law prohibiting an expert witness from commenting on the credibility of a victim in a criminal sex abuse proceeding." *Id.* Thus, in *Dudley*, the court did nothing more than "reaffirm[] that [it is] committed to the legal principle that an expert witness cannot give testimony that directly or indirectly comments on the child's credibility." *Id.* at 677; *see also Garcia v. State*, No. 15-2196, 2016 WL 4382575, at *1 (Iowa Ct. App. Aug. 17, 2016) (affirming district court's summary dismissal of PCR application, which noted "*Dudley* did not constitute new law").

**IV. Conclusion.**

Allison's trial counsel did not breach an essential duty in deciding not to attack a witness's credibility with allegations that witness perpetrated sexual abuse, so Allison's first PCR appellate counsel had no reason to challenge the first PCR court's ruling on appeal. And *Dudley* did not announce a new ground of law, so Allison's second claim also fails. We affirm the denial of Allison's second PCR application.

**AFFIRMED.**