# IN THE COURT OF APPEALS OF IOWA

No. 17-0876
Filed June 6, 2018

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**PERRY DALE VANDEKIEFT,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Lyon County, Patrick M. Carr, Judge.

Perry VanDekieft appeals his conviction of sexual abuse in the second degree. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kyle P. Hanson, Assistant Attorney General, for appellee.

Considered by Vogel, P.J., and Doyle and Bower, JJ. Carr, S.J., takes no part.

**VOGEL, Presiding Judge.**

Perry VanDekieft[1] appeals his conviction of sexual abuse in the second degree for his actions with his stepdaughter, C.L.  He asserts the district court abused its discretion in allowing testimony from the expert witness, it erred in allowing hearsay from his wife Tari VanDekieft, and the prosecutor committed misconduct in his statements, all of which inappropriately supported the credibility of C.L.  He also asserts his counsel was ineffective for failing to object to a jury instruction that allowed the jury to use his out-of-court statements as if they had been made at trial.  We find he did not preserve error on his objection to the expert witness, and, even if he had preserved error, the expert did not comment on C.L.'s credibility.  We also find the district court improperly admitted hearsay, but the inadmissible hearsay did not prejudice Perry's substantial rights.  Additionally, we find he did not preserve error on his claim of prosecutorial misconduct, and, even if he had preserved error, the prosecutor's statements do not rise to the level of misconduct.  Finally, we find Perry's counsel was not ineffective because the jury instruction correctly states the law, and, even if we were to find it misstates the law, no prejudice resulted.  Accordingly, we affirm.

## I.       Background Facts and Proceedings

Perry and Tari VanDekieft[2] married in September 2009.  She called him her "best friend," and he considered her the same.  In August 2014, the couple moved into a home in rural Inwood located in the salvage yard where they worked.  The

---

[1] The capitalization and spacing of the Defendant–Appellant's last name is inconsistent throughout the record.  The Defendant–Appellant uses "VanDekieft" in his brief to us, as do we.
[2] For clarity, we will refer to Perry and Tari by their first names.

couple lived in the home with their children, including A.V., their daughter who was born during the marriage, and C.L., Tari's daughter from a previous marriage who was born in 2004. Perry is C.L.'s stepfather.

In the Inwood home, C.L. shared a bedroom with A.V., who was about eight years younger than C.L. For about the first year they lived in the home, the girls slept in bunk beds. C.L slept in the top bunk, and A.V. slept in the bottom bunk where she would have had difficulty seeing into the top bunk. In the summer of 2015, the girls moved from the bunk beds into separate beds on the floor. During this time, A.V. usually went to bed around 8:00 or 9:00 p.m. C.L. set her own bedtime, which was usually around 10:00 or 10:30 p.m. but occasionally as late as midnight.

Beginning in the fall of 2014, C.L.'s bedtime routine included Perry tucking her into bed. Tari stayed out of the girls' bedroom during the bedtime routine because Tari wanted C.L. and Perry to be able to talk openly. Perry spent anywhere from five to forty-five minutes in the girls' bedroom during the routine each night. According to Tari, the forty-five-minute sessions occurred "pretty regularly," about a couple of times per week.

Sometime in 2015, Perry took C.L. into town to purchase tampons for her. According to Perry's testimony, C.L mentioned during the trip that tampons hurt, and Perry told her "a guy is bigger than a tampon, and to my knowledge sex doesn't hurt." Tari testified that in the spring of 2016, Perry said C.L. had asked him about sex and offered to show C.L. "soft porn" images. Perry acknowledged he offered to show C.L. something after she asked about sex but "hadn't found it yet," and he denied wanting to show her pornographic images.

On the afternoon of Sunday, July 31, 2016, Perry and Tari were working outside while C.L. washed dishes alone inside the house. At one point, Perry went into the house to refill his coffee cup. Shortly thereafter, Tari also went inside to grab a tool. When Tari stepped inside, she saw C.L. standing at the sink with Perry standing right behind her and their backs turned to Tari. Perry was surrounding C.L. with his arms and kissing her on the back of her neck. According to Perry's testimony, C.L. felt bad about her recent haircut at the time, so he hugged and kissed her from behind and told her, "I love you. I think you're pretty." He testified he only wanted her to feel good about herself, and he denied wanting any sexual benefit from her. Tari testified that when Perry heard her shut the front door, he jumped back seemingly startled, went to the coffee counter, and then went outside without saying anything.

Tari talked to C.L. about the encounter that afternoon, but she never talked to Perry about it. Suspicious as to what she had observed, Tari began paying more attention to Perry's interactions with C.L. The next evening, on Monday, August 1, 2016, Perry took C.L into the girls' bedroom to tuck her into bed as usual. Tari soon noticed C.L. had not finished her chores, and she went to the girls' bedroom to tell her. From the doorway to the girls' bedroom, Tari saw C.L. lying in her bed and playing with her phone. Perry was also lying in her bed with his back to the doorway, his feet dangling off the bed near C.L.'s head, and his face next to her hip. Tari testified Perry was using his hand to rub C.L. over her clothes on her hip and on the front of her thigh in a "suggestive" and "inappropriate" manner.

Tari did not talk to Perry about what she saw that Monday night, but she tried to keep Perry from being alone with C.L. until C.L.'s regular counseling appointment on Thursday. At the Thursday counseling appointment, Tari asked C.L. about the Monday night incident and if anything else had happened.

At trial, C.L. testified about her interactions with Perry. The touching events usually occurred at night. He typically used his hand to touch her on her legs, thighs, and butt while he called her terms like "sexy" and "pretty." He touched her over her clothes and on her bare skin, occasionally pulling her underpants down to her knees. On the night of Monday, August 1, 2016, he rubbed and kissed her legs and told her she was "sexy" and "pretty" while he laid with her in her bed. He first touched her when she was in second or third grade, at which time he rubbed her legs and said "you don't have to sleep with your clothes on. You can sleep [naked] like I do." He touched her more frequently at night by 2014, and he touched her almost every night by 2016. One night around March 2016, he entered her room, pulled down her pants, kissed and rubbed her bare butt, and rubbed the outside of her bare vagina with two fingers. A couple of years earlier, when C.L. was in fifth grade, Perry rubbed her breasts over her clothes and commented on how they were developing.

On Thursday, August 4, 2016, after the counseling appointment, Tari told Perry via text she was taking the children and leaving him. She did not mention the touching incidents at the time. On Sunday, August 7, Lyon County Chief Deputy Jerry Birkey executed a search warrant of the VanDekieft home along with four other officers. Perry did not ask about the reason for the search. He told

deputy Birkey that Tari is "vengeful" and "spiteful," and he believed Tari had accused him of "child molestation."

The State charged Perry with sexual abuse in the second degree. The parties proceeded to a jury trial. At trial, the State offered testimony from Tari, C.L., deputy Birkey, and Victoria Hilton. Hilton is a child forensic interviewer who interviewed C.L. on August 5, 2016; however, the State offered her as an expert witness to testify generally about interviewing children regarding sexual abuse. Hilton did not testify about C.L. beyond acknowledging her interview. Perry testified in his defense. He denied ever touching C.L. for sexual gratification, though he acknowledged he would touch her on her side and leg and tell her she was pretty "to reassure her." He denied ever touching C.L.'s vagina. He testified Tari may have falsely accused him because he had a strong relationship with C.L. and was "awful friendly with" her. The jury convicted Perry of sexual abuse in the second degree in violation of Iowa Code section 709.3(1)(b) (2016), and the court sentenced him to twenty-five years imprisonment.

Perry now appeals. He asserts the district court abused its discretion in allowing testimony from Hilton, the court erred in allowing Tari to present hearsay testimony, and the prosecutor committed misconduct. He also asserts his counsel was ineffective for failing to object to a jury instruction that allowed the jury to use his out-of-court statements as if they had been made at trial.

## II. Standard of Review

We review the admission of expert testimony for abuse of discretion. *State v. Brown*, 856 N.W.2d 685, 688 (Iowa 2014). The admission of hearsay is reviewed for errors at law. *State v. Newell*, 710 N.W.2d 6, 18 (Iowa 2006). We

review claims of prosecutorial misconduct and ineffective-assistance-of-counsel de novo. *State v. Schlitter*, 881 N.W.2d 380, 388 (Iowa 2016). To the extent the underlying challenge to the jury instruction implicates a constitutional right, we review the challenge de novo. *State v. Green*, 896 N.W.2d 770, 775 (Iowa 2017). To the extent the underlying challenge to the jury instruction does not implicate a constitutional right, we review the challenge for errors at law, and we "determine whether the challenged instruction accurately states the law and is supported by substantial evidence." *Id.* (quoting *State v. Hanes*, 790 N.W.2d 545, 548 (Iowa 2010)).

### III.  Admission of Expert Witness Hilton

Perry argues the district court abused its discretion by allowing Hilton to testify as an expert witness. According to Perry, Hilton inappropriately bolstered C.L.'s credibility with her testimony about delayed disclosure among abused children.

As an initial matter, the State argues Perry has not preserved error on this argument. Perry objected to the admissibility of Hilton as an expert witness in a motion in limine. The district court responded in writing:

> After examining the authorities cited, including *State v. Dudley*, 856 N.W.2d 668 (Iowa 2014), the Court thinks that limited testimony concerning grooming is admissible. To that extent, the Defendant's motion in limine is overruled. The Court expects that the "grooming" testimony would be offered in general terms. The Court thinks it may be admissible, on a proper foundation, to explain delayed reporting or partial or incomplete reporting. Testimony that C.L. might suffer child sexual abuse accommodation syndrome will not be permitted. Testimony that the Defendant is a groomer and that groomers are molesters will not be permitted. Testimony that the Defendant and his conduct fit a profile of child molesters will not be permitted. Testimony, including opinions, vouching directly or indirectly for the veracity of C.L. will not be permitted.

Perry renewed his objection to allowing Hilton to testify prior to the State calling her as a witness, and the district court responded orally:

> You know, we considered this at some length following the submission of your motion in limine. And it's kind of an old saw, but I think that the arguments you made should form part of your cross-examination and argument. I think that, assuming a proper foundation is laid in open court with respect to her proposed testimony, then I think that her testimony is admissible given Iowa—customary Iowa rules on the admission of expert testimony, and that it will then be to—the trier of fact will most certainly be instructed to disregard all, part or none of any expert witness's testimony just like any other witness. They should consider the strength of the opinion and qualifications and all those things. And in Iowa so far the strong message from our supreme court is that we trust the jury's—common sense of Iowa juries to see through the junk science.

Hilton was allowed to testify, and Perry offered no further objection.

Generally, a party waives error on a ruling on a motion in limine unless the party makes a timely objection at trial when the evidence is offered. *State v. Alberts*, 722 N.W.2d 402, 406 (Iowa 2006). However, the general rule does not apply if the district court resolves the motion in limine "'in such a way it is beyond question whether or not the challenged evidence will be admitted during trial.'" *Id.* (quoting *State v. Tangie*, 616 N.W.2d 564, 568–69 (Iowa 2000)). Such a decision has the effect of a ruling and error is preserved even if the party does not object again during trial. *Id.*

The district court's written response permitted Hilton to present "limited testimony concerning grooming." The district court otherwise reserved its decision as to whether the grooming testimony exceeded this limited purpose, specifically stating the grooming testimony "may be admissible . . . to explain delayed reporting or partial or incomplete reporting." The district court's oral statement, which used

"think" and "should" multiple times, provided a no more definitive ruling on the admissibility of Hilton's testimony. Because the district court did not resolve "beyond question" the admissibility of Hilton's testimony regarding delayed disclosure, Perry has not preserved error on the issue. *See id.*

Even if Perry had preserved error on the issue, his argument would fail. Iowa has "a liberal view on the admissibility of expert testimony." *Ranes v. Adams Labs., Inc.*, 778 N.W.2d 677, 685 (Iowa 2010). Perry correctly notes an expert witness may not directly or indirectly comment on the credibility of a witness. *State v. Myers*, 382 N.W.2d 91, 97 (Iowa 1986). However, we have long allowed experts to "express opinions on matters that explain relevant mental and psychological symptoms present in sexually abused children." *Dudley*, 856 N.W.2d at 676 (quoting *Myers*, 382 N.W.2d at 97). An expert witness may "testify generally that victims of child abuse display certain demeanors." *State v. Jaquez*, 956 N.W.2d 663, 666 (Iowa 2014). If "an expert witness testifies a child's demeanor or symptoms are consistent with child abuse, the expert crosses that very thin line and indirectly vouches for the victim's credibility, thereby commenting on the defendant's guilt or innocence." *Id.*

Hilton acknowledged she interviewed C.L. but stated she would not give an opinion on the credibility of C.L. Hilton otherwise did not testify about C.L. She only testified generally about the behavior of child sexual abuse victims, including testimony about why victims may delay disclosure of the abuse. Hilton did not directly or indirectly compare C.L.'s behavior to a child abuse victim. *See id.* Therefore, even if Perry had preserved error on Hilton's testimony about delayed disclosure, he has not shown the district court erred in admitting her testimony.

## IV.    Admission of Hearsay

Perry next argues the district court erred in allowing Tari to present hearsay while testifying about her conversation with C.L. during the counselor appointment on Thursday, August 4, 2016.  At trial, the following exchange occurred:

> [DEFENSE]: At this time, Judge, I would interpose an objection with respect to hearsay.
> THE COURT: Ladies and gentlemen, I'm going to allow the witness to answer briefly in order to explain why later events occurred, and you'll see what I mean by that by [the State's] questioning.
> [STATE]. What did you ask [C.L.] about Monday night?
> [TARI]. I asked her what [Perry] was doing on the bed with her.
> Q. And what did she tell you?  A. That he was rubbing her leg and telling her she was pretty.
> Q. Did she say anything else that you recall about Monday night?  A. That he—that he was kissing her leg.
> Q. So he was kissing her leg, rubbing her leg and saying she was pretty?  A. Yes, sir.
> Q. And you had earlier, you mentioned, asked her about the incident in the kitchen; correct?  A. Yes.
> Q. Did you ask her anything else after she told you about the Monday night incident?  A. I asked her how long—I asked her if he had ever touched her like that before.
> Q. And what did she say?  A. Yes.
> Q. And what else did you ask her?  A. I asked her if he had ever gone under her underwear, and she said yes. And I asked her if he had ever done anything more than that—or I asked her if—if he had ever touched under her shirt. And I asked her—I don't remember her answer on that one. And I asked her if he had ever done anything else worse than that, and she said no.

The admission of prejudicial hearsay is reversible error.  *State v. Plain*, 898 N.W.2d 801, 811 (Iowa 2017).  Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  *Id.* at 812 (quoting Iowa R. Evid. 5.801(c)).  Hearsay is generally not admissible unless an exception applies.  Iowa R. Evid. 5.802.  An out-of-court statement is not hearsay if it is offered only to explain subsequent

conduct that is relevant to the State's case. *Plain*, 898 N.W.2d at 812. However, if such "evidence is admitted, the court must limit its scope to that needed to achieve its purpose." *Id.* (quoting *McElroy v. State*, 637 N.W.2d 488, 502 (Iowa 2001)).

> It is up to the trial court to determine whether the statement is truly relevant to the purpose for which it is being offered, or whether the statement is merely an attempt to put before the fact finder inadmissible evidence. To determine if an alleged hearsay statement is admissible, we must analyze the purposes for which it was offered. In analyzing the statement, we look at the real purpose for the offered testimony, not just the purposes urged by the prosecutor. We base our determination on an objective finding based on the facts and circumstances developed by the record.

*State v. Elliott*, 806 N.W.2d 660, 668 (Iowa 2011) (internal quotation marks and citations omitted).

Tari recounted parts of her out-of-court conversation with C.L. about C.L.'s interactions with Perry. The State argues this testimony is not hearsay because it was not offered to prove Perry acted inappropriately with C.L.; instead, it was offered to show Tari's subsequent conduct, specifically to show why she contacted authorities and left Perry shortly after the counseling session. However, Tari's testimony went beyond merely explaining her subsequent conduct. She relayed specific details from C.L. that Perry "was rubbing her leg and telling her she was pretty" and "kissing her leg" on that Monday night in the bedroom. Tari also testified that C.L. acknowledged Perry had "gone under her underwear." This specificity shows the conversation was offered to prove the matter asserted. *See id.* Furthermore, the district court did not adequately limit the scope of the statements. While the court alerted the jury Tari's testimony would "explain why later events occurred," it did not instruct the jury to use her testimony only to explain

later events, nor did it caution the jury against using the testimony as evidence of the matter asserted. Therefore, the district court erred in admitting Tari's hearsay testimony about her conversation with C.L. during the counselor appointment.

Nonetheless, this error did not prejudice Perry's substantial right to a fair trial as it was cumulative of other evidence properly admitted. *See Plain*, 898 N.W.2d at 813.

> [A]dmission of hearsay evidence over a proper objection is presumed to be prejudicial error unless the contrary is affirmatively established. The contrary is affirmatively established if the record shows the hearsay evidence did not affect the jury's finding of guilt. One way to show the tainted evidence did not have an impact on the jury's verdict is to show the tainted evidence was merely cumulative. If the record contains cumulative evidence in the form of testimony, the hearsay testimony's trustworthiness must overcome the presumption of prejudice. We measure the trustworthiness of the hearsay testimony based on the trustworthiness of the corroborating testimony.

*Elliott*, 806 N.W.2d at 669 (alteration in original) (internal quotation marks and citations omitted).

All of Tari's inadmissible hearsay is corroborated by or cumulative of other testimony. Tari herself testified she saw Perry rubbing C.L.'s leg that Monday night. C.L. also testified about that night, stating Perry rubbed and kissed her leg and told her she is pretty. Additionally, C.L. testified about other encounters where Perry pulled down her underpants and touched her bare skin. Finally, Perry corroborated some of the hearsay in his own testimony when he acknowledged he tucked C.L. into bed that Monday night. While he testified he acted "to reassure her, calm her down," he also said he would call her pretty, and he said "I'd rub my hands down her side, or I'd reach out and touch her leg." Accordingly, we are satisfied the entire record sufficiently establishes the trustworthiness of the

admitted hearsay, and the hearsay evidence did not affect the jury's guilty verdict. *See id.* Thus, admission of the hearsay evidence did not prejudice Perry's substantial rights.

### V.      Prosecutorial Misconduct

Perry argues the prosecutor impermissibly commented on C.L's credibility in his opening arguments when he said, "[I]n this case the State believes the evidence will show that [C.L.], that now 12-year-old girl, is credible." Perry argues the prosecutor again impermissibly commented on C.L.'s credibility in his closing argument:

> And ladies and gentlemen, the evidence has shown that [C.L.] is credible. And you can base your decision solely on her testimony because it's credible, it's consistent, the evidence showed, and it's corroborated.
> . . . .
> . . . Ladies and gentlemen, the State contends that the evidence shows that [C.L. is] credible. That she's credible. You got to see and listen to her testimony.

Perry argues these statements rose to the level of prosecutorial misconduct and violated his due process rights to a fair trial.

As an initial matter, the State argues Perry failed to preserve error on his constitutional challenge to these statements. "To preserve error on a constitutional claim, counsel should inform the district court of the constitutional basis for any motion a party makes." *State v. Ary*, 877 N.W.2d 686, 699 (Iowa 2016). Perry did not object during closing arguments. Perry objected to the specific quote above during opening arguments; however, he did not mention due process at the time. His objection during opening arguments referred to his motion in limine, which asked the court to "bar the introduction of any statement by the prosecutor or by

any witness for the prosecution regarding the credibility or truthfulness of the complaining witness insofar as the same constitutes an abuse of discretion and is prejudicial." This argument in the motion in limine only cites *Myers*, 382 N.W.2d at 91, which involves the admissibility of expert testimony and whether its probative value outweighs its prejudice under the rules of evidence. At no point did Perry inform the district court of—nor did the district court rule on—a constitutional objection to the prosecutor's statements regarding C.L's credibility. *See Ary*, 877 N.W.2d at 699. Therefore, Perry has not preserved error on the issue of prosecutorial misconduct.

Even if Perry had preserved error on the issue of prosecutorial misconduct, his argument fails. To succeed on a claim of prosecutorial misconduct, a defendant must prove both misconduct occurred and "the misconduct resulted in prejudice to such an extent that the defendant was denied a fair trial." *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003). Prosecutorial misconduct requires more than a mere error. *State v. Schlitter*, 881 N.W.2d 380, 394 (Iowa 2016).

> Prosecutorial misconduct includes those statements "where a prosecutor intentionally violates a clear and unambiguous obligation or standard imposed by law, applicable rule or professional conduct," as well as "those situations where a prosecutor recklessly disregards a duty to comply with an obligation or standard." Prosecutorial error occurs "where the prosecutor exercises poor judgment" and "where the attorney has made a mistake" based on "excusable human error, despite the attorney's use of reasonable care." This distinction also conforms to the general definitions for misconduct and a trial error.

*Id.* (quoting Shawn E. Minihan, *Measuring Prosecutorial Actions: An Analysis of Misconduct versus Error*, Prosecutor, Dec. 2014, at 24–25). A prosecutor may not personally vouch for the credibility of a witness. *Graves*, 668 N.W.2d at 874. However, a prosecutor has "'some latitude during closing argument in analyzing

the evidence admitted in the trial.'" *Id.* (quoting *State v. Phillips*, 226 N.W.2d 16, 19 (Iowa 1975)). "[A] prosecutor may argue the reasonable inferences and conclusions to be drawn from the evidence." *Id.* The credibility of witnesses is a proper subject for discussion during closing argument. A prosecutor may not, however, express or imply his or her personal belief in the truth or falsity of the testimony of a witness." *State v. Martens*, 521 N.W.2d 768, 772 (Iowa Ct. App. 1994).

The comments in this case do not show the prosecutor impermissibly vouched for C.L.'s credibility. The prosecutor prefaced each reference to C.L.'s credibility with "the evidence will show," "the evidence has shown," or "the evidence shows." Such comments are reasonable conclusions based on the evidence rather than any explicit or implied personal belief in C.L.'s credibility. *See id.* Therefore, even if Perry had preserved error, he has not shown prosecutorial misconduct occurred.

**VI.    Jury Instruction**

Jury instruction number eight reads:

> Evidence has been offered to show that the defendant made statements at an earlier time and place.
> If you find any of the statements were made, then you may consider them as part of the evidence, just as if they had been made at this trial.
> You may also use these statements to help you decide if you believe the defendant. You may disregard all or any part of the defendant's testimony if you find the statements were made and were inconsistent with the defendant's testimony given at trial, but you are not required to do so. Do not disregard the defendant's testimony if other evidence you believe supports it or you believe it for any other reason.

Perry argues his counsel was ineffective for failing to object to this instruction. He asserts that instructing jurors to consider his out-of-court statements "as part of the evidence, just as if they had been made at this trial" creates a legal fiction that all of his out-of-court statements were made under oath. This essentially forces him to testify against himself at trial in violation of his right against self-incrimination, it improperly adds weight to his out-of-court statements, and it implicitly leads to the conclusion that he committed perjury if any out-of-court statement conflicts with an in-court statement.

"Ineffective-assistance-of-counsel claims require a showing by a preponderance of the evidence both that counsel failed an essential duty and that the failure resulted in prejudice." *Schlitter*, 881 N.W.2d at 388. "We review jury instructions as a whole to determine whether the jury instructions correctly state the law." *State v. Tipton*, 897 N.W.2d 653, 694 (Iowa 2017). We note jury instruction number nine reads:

> Decide the facts from the evidence. Consider the evidence using your observations, common sense and experience. Try to reconcile any conflicts in the evidence; but if you cannot, accept the evidence you find more believable.
> In determining the facts, you may have to decide what testimony you believe.
> You may believe all, part or none of any witness's testimony.
> There are many factors which you may consider in deciding what testimony to believe, for example:
> 1. Whether the testimony is reasonable and consistent with other evidence you believe.
> 2. Whether a witness has made inconsistent statements.
> 3. The witness's appearance, conduct, age, intelligence, memory and knowledge of the facts.
> 4. The witness's interest in the trial, their motive, candor, bias and prejudice.

First, while Perry acknowledges his out-of-court statements were properly admitted under Iowa Rule of Evidence 5.801(d)(2), he argues instruction number eight and the use of his out-of-court statements violates his Fifth Amendment protection from self-incrimination. "The Fifth Amendment of the United States Constitution, as applied to the states through the Fourteenth Amendment, provides that no person, 'shall be compelled in any criminal case to be a witness against himself.'" *State v. Marks*, 644 N.W.2d 35, 37 (Iowa Ct. App. 2002). The Fifth Amendment protects communications that are testimonial, incriminating, and compelled. *State v. Iowa Dist. Ct.*, 801 N.W.2d 513, 518 (Iowa 2011). Compulsion generally requires state-imposed sanctions or penalties for using the privilege. *Id.* Perry has not identified any out-of-court statements he gave under compulsion. Rather, all of his out-of-court statements he identified were freely given prior to state involvement. *See id.* Therefore, Perry has not shown instruction eight and the use of his out-of-court statements violates his Fifth Amendment rights.

Second, Perry argues instruction number eight misstates the law. He argues that instructing the jury to consider out-of-court statements "as if they had been made at this trial" incorrectly implies the out-of-court statements were made under oath. This assigns equal weight to all statements and necessarily leads to the conclusion that he committed perjury if any two statements attributed to him conflict, regardless of whether those statements occurred prior to or during trial. He points to the out-of-court statements attributed to him that he denied making at trial, specifically the claims that he told C.L. she should sleep naked, she was sexy, and she could view pornography with him.

We find instruction number eight correctly states the law. Nothing in instruction eight, or any other instruction given, directs the jury to consider Perry's out-of-court statements as given under oath. The instructions also do not discuss perjury, nor do they assign any credibility to out-of-court statements in relation to those given during trial under oath. Instruction eight merely allows the jury to consider Perry's out-of-court statements as part of the entire body of evidence, as allowed under Iowa Rule of Evidence 5.801(d)(2).

Furthermore, even if we were to determine instruction number eight misstates the law, no prejudice resulted. The instructions provide ample guidance for jurors in navigating conflicting evidence. As stated in instruction eight, the jury could simply decide Perry never made the conflicting out-of-court statements. Alternatively, as stated in instruction nine, the jury could reconcile the conflicting evidence, or they could follow the instruction to decide which evidence to believe. Additionally, even if the jury improperly placed too much weight on Perry's out-of-court statements, the record contains strong evidence of his guilt other than his out-of-court statements. Specifically, C.L. testified about her recollections of the touching events, including the time when he rubbed her vagina, and Perry's own testimony about rubbing her legs and calling her pretty corroborates much of her testimony. Because instruction eight correctly states the law, and, even if it misstates the law, Perry suffered no resulting prejudice, his counsel was not ineffective for failing to object to instruction eight.

## VII. Conclusion

Perry did not preserve error on his objection to Hilton's testimony. Even if he had preserved error, the district court did not abuse its discretion in admitting

Hilton's testimony because she did not comment on C.L.'s credibility. The district court erred in allowing Tari to testify about inadmissible hearsay, but admitting the hearsay testimony did not prejudice Perry's substantial rights. Perry did not preserve error on his claim of prosecutorial misconduct. Even if he had preserved error, the prosecutor's statements do not rise to the level of misconduct. Finally, Perry's counsel was not ineffective because the jury instruction did not violate his constitutional protection from self-incrimination, the instruction correctly states the law, and, even if we were to find it misstates the law, no prejudice resulted. Accordingly, we affirm.

**AFFIRMED.**